MURRAY KAY AND IDA KAY, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2002-63—2006-63. Filed July 28, 1965.

*Jacob Shearer,* for the petitioners.
*John Schessler,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Plastic Glide Corp. (formerly Plastiglide Manufacturing Corp.), docket No. 2003-63; Saul Bolton and Ethel Rose Bolton, docket No. 2004-63; Louis L. Colen, Surviving Husband, and Estate of Freda Colen, Deceased, Louis L. Colen, Administrator, docket No. 2005-63; and Ralph Trustman and Blossom Trustman, docket No. 2006-63.

OPINION

DRENNEN, *Judge:* In these consolidated cases respondent determined deficiencies in petitioners' income taxes as follows:

| Docket No. | Petitioner | Fiscal or calendar year ended— | Deficiency |
|---|---|---|---|
| 2002–63 | Murray Kay and Ida Kay | Dec. 31, 1959 | $768.74 |
|  |  | Dec. 31, 1960 | 777.68 |
| 2003–63 | Plastic Glide Corp. (formerly Plastiglide Manufacturing Corp.) | July 31, 1959 | 1,559.45 |
|  |  | July 31, 1960 | 3,754.96 |
|  |  | Aug. 1, 1960, to Sept. 30, 1960. | 704.76 |
| 2004.63 | Saul Bolton and Ethel Rose Bolton | Dec. 31, 1959 | 3,402.45 |
|  |  | Dec. 31, 1960 | 3,537 60 |
| 2005–63 | Louis L. Colen, surviving husband, and Estate of Freda Colen, deceased, Louis L. Colen, administrator. | Dec. 31, 1959 | 2,796.76 |
|  |  | Dec. 31, 1960 | 1,863.87 |
| 2006–63 | Ralph Trustman and Blossom Trustman | Dec. 31, 1959 | 3,260.51 |
|  |  | Dec. 31, 1960 | 3,375.01 |

Due to certain concessions of the petitioners only a portion of the deficiency in each case is now in dispute. The issue for decision is whether a portion of certain payments made by each of the petitioners each year are deductible as interest paid on insurance policy loans.

All of the facts were stipulated and the stipulation of facts, together with the facts contained in the exhibits attached thereto, are incorporated herein by reference. A summary of the facts follows.

Petitioners Murray Kay and Ida Kay, husband and wife, Saul Bolton and Ethel Rose Bolton, husband and wife, and Ralph Trustman and Blossom Trustman, husband and wife, reside in Los Angeles, Calif. Louis L. Colen and Freda Colen, deceased, were husband and wife residing in Los Angeles, Calif., in 1959 and 1960. Each husband and wife filed joint Federal income tax returns for the years 1959 and 1960 with the district director of internal revenue, Los Angeles, Calif., on calendar years basis and cash method of reporting. References herein to petitioners, or to the individual petitioners by last name, will be to the corporation and the husband-petitioners, unless otherwise indicated.

Plastic Glide Corp. (hereinafter referred to as Plastic Glide) is a California corporation and filed its corporate income tax returns for its fiscal years ended July 31, 1959, July 31, 1960, and September 30, 1960, with the district director of internal revenue in Los Angeles, Calif., on a fiscal year basis and accrual method of accounting. Bolton, Trustman, and Colen were president, secretary, and treasurer, respectively, and each owned 28.45 percent of the stock of Plastic Glide. Kay was an employee of Plastic Glide and owned 9.91 percent of its stock.

Sometime during the latter part of 1958, and prior to February 18, 1959, the individual petitioners, for themselves and Plastic Glide, had meetings with an insurance broker representing State Mutual Life

Assurance Co. of America (hereinafter called State Mutual) to discuss life insurance. The broker suggested a plan for purchasing life insurance, which was referred to as "A Self Funding Loan," using State Mutual's "Equity Builder Whole Life" policies. The broker prepared a chart for each petitioner, including Ida Kay and Plastic Glide, based on a $100,000 policy for each prospective applicant at their respective ages, which reflected the insurance data over a period of 20 years as well as the financial data for that period before and after taxes (using an assumed tax bracket) if the policies were purchased under the self-funding loan plan.

In summary, under the self-funding life insurance plan, as described by the broker, arrangements are made with a financial institution to loan to the owner of a life insurance policy an amount equal to 20 annual premiums on the policy, with interest payable annually in advance at rates of 4⅝ percent to 4¾ percent. As security for the loan the lending institution has the owner-borrower buy Government securities in the face amount of the loan. The borrower then pledges and assigns the insurance policy and the Government securities to the lending institution as collateral for the loan. Under the assignment of the insurance policy the lending institution is authorized to borrow on the policy and surrender it for its cash surrender value. Under the collateral agreement the lending institution is also authorized to pledge, hypothecate, transfer, borrow on, or otherwise apply, use, or deal with the collateral pledged. The lending institution guarantees a 2-percent return to the borrower on the securities pledged. Gains or losses on the securities inure to the lending institution. The collateral note given by the borrower to the lending institution is nonnegotiable and the lending institution agrees to look solely to the collateral pledged for payment of principal and interest on the loan in case of default. Upon prepayment of the loan or death of the insured the securities then held as collateral are first applied to liquidate the loan and the balance necessary is paid out of the cash surrender value or death benefits of the insurance policy. The equity of the borrower is the surplus of cash surrender value or death benefits under the policy.

The "Equity Builder Whole Life" policy issued by State Mutual provides a death benefit up to age 65 equal to the face amount of the policy plus the cash values of the policy; thereafter the death benefit is the face amount. The policy pays nonguaranteed dividends. The policy has a cash surrender and loan value equal to the full reserve under the policy as set forth in a schedule therein. The policy provides that the owner shall have the right to obtain a loan for the sole

purpose of paying premiums on the policy. The policy provides as follows with reference to policy loans:

At any time after the first year's premium has been paid on this policy, provided it is not continued as extended insurance, a loan may be obtained from the Company on the sole security of this policy of a sum which, with interest, shall not exceed the loan value at the end of the policy year as shown by the accompanying table and the value of any paid-up additions thereto, less any indebtedness to the Company under this policy, and any unpaid portion of the premium for the then current policy year. * * * Interest on such loans shall be paid at the rate of five per cent (5%) annually, payable at the end of each year * * *. Any interest not paid when due or unpaid when the loan is increased, shall be added to and become a part of the principal of the loan and subject to the same rate of interest. * * *

Typical of the charts furnished the petitioners by the insurance broker, illustrating the use of the self-funding loan plan, is the following, which is in condensed form, omitting intervening years:

LOUIS L. COLEN—State Mutual Life Assur. Co. of Amer. $100,000 equity builder whole life—* * * ann. prem. $4662.75 to age 60—thereafter $4522.75 to age 65—prem. from age 65 $3,858.00 loan $93,000—guaranteed int. rate 4¾% for 16 yrs. Thereafter 4⅝%—security yield 2%

| Year | 1 Total death benefit | 2 Total cash value | 3 Amount due lender | 4 Net death benefit | 5 Excess cash value | 6 Annual gross interest |
|---|---|---|---|---|---|---|
| 1 | $102,646 | $2,646 | $2,646.00 | $100,000.00 | 0 | $4,417.50 |
| 5 | 113,269 | 13,269 | 13,123.33 | 100,145.67 | 145.67 | 4,417.50 |
| 10 | 126,152 | 26,152 | 25,375.83 | 100,776.17 | 766.17 | 4,417.50 |
| 15 | 137,482 | 37,482 | 36,286.33 | 101,195.67 | 1,195.67 | 4,417.50 |
| 20 | 145,369 | 45,369 | 44,013.37 | 101,355.63 | 1,355.63 | 4,301.25 |
| Averages | | | | 100,728.07 | | |

| Year | 7 Annual securities yield | 8 Annual net gross interest | 9 Assuming 70% tax bracket | 10 Dividend available nontaxable | 11 Net outlay after dividend deduction | 12 Net amount freed for investment |
|---|---|---|---|---|---|---|
| 1 | $1,766.74 | $2,650.76 | $795.23 | $331.00 | $464.23 | $4,198.52 |
| 5 | 1,393.72 | 3,023.78 | 907.13 | 471.00 | 436.13 | 4,226.62 |
| 10 | 927.45 | 3,490.05 | 1,047.02 | 974.00 | 73.02 | 4,589.73 |
| 15 | 461.17 | 3,956.33 | 1,186.90 | 1,314.00 | 127.10 cr | 4,789.85 |
| 20 | 3.30 | 4,297.95 | 1,289.39 | 1,544.00 | 254.61 cr | 477.36 |
| Averages | | 3,512.59 | 1,053.77 | 951.20 | 102.58 | 4,532.17 |

DIVIDENDS NOT GUARANTEED ANY CHANGES WILL EFFECT SCHEDULE ACCORDINGLY

1. Face of policy plus cash value.
2. Guaranteed cash value.
3. Fixed by contract—due lender upon termination.
4. Column 1 minus column 3.
5. Column 2 minus column 3.
6. Interest rate guaranteed by Finance Co. not Ins. Co. not J.L.A.
7. Guaranteed securities yield available at beginning of year.
8. Column 6 minus column 7 interest payable in advance.
9. Column 8 after taking assumed tax credit (see sec. 163, I.R.C. 1954).
10. Dividend-nontaxable available to reduce cost.
11. Column 9 minus column 10 (1st yr. div. avail. when any portion of 2nd yr. prem. pd.).
12. Annual premium less column 11.

All of the petitioners decided to purchase insurance from State Mutual under the suggested plan.   Thereafter State Mutual issued the following insurance policies:

| Policy No. — | Owner and beneficiary | Insured | Face amount |
|---|---|---|---|
| 921154 | Murray Kay | Ida Kay | $25,000 |
| 919044 | Ida Kay | Murray Kay | 50,000 |
| 919304 | Plastic Glide | Louis L. Colen | 100,000 |
| 919312 | Plastic Glide | Ralph Trustman | 100,000 |
| 920739 | Plastic Glide | Saul Bolton | 100,000 |
| 919306 | Saul Bolton | Louis L. Colen | 100,000 |
| 919316 | Saul Bolton | Ralph Trustman | 100,000 |
| 919314 | Louis L. Colen | Ralph Trustman | 100,000 |
| 920740 | Louis L. Colen | Saul Bolton | 100,000 |
| 919310 | Ralph Trustman | Louis L. Colen | 100,000 |
| 920741 | Ralph Trustman | Saul Bolton | 100,000 |

Beverly Hills Enterprises, Inc. (hereinafter called Beverly Hills), was to be the lending agency under the plan.   Beverly Hills is a California corporation, incorporated in 1956.   From its inception through the years in issue it has been wholly owned by Jules Schwartz, who was not related to any of these petitioners.   In addition to the transactions with these petitioners, Beverly Hills had many similar transactions.

Pursuant to the plan each petitioner, including Ida Kay and Plastic Glide, executed certain documents purporting to evidence loans from Beverly Hills to petitioners and to pledge and assign the insurance policies to Beverly Hills as collateral for the purported loans.   These documents were a "Collateral Note," a "Loan and Pledge Agreement," and an "Assignment of Life Insurance Policy as Collateral."

The collateral notes were executed by the borrowers, who were the owner-beneficiaries of the policies rather than the insured, whereby they promised to pay Beverly Hills the principal amount of the loan 20 years from the date of the note, with interest payable annually in advance at the rates heretofore indicated.   The principal amount of the note was approximately 20 times the annual premiums on the policies pledged as collateral.   As security the borrower pledged as collateral for the payment of the principal indebtedness the insurance policies listed and United States securities having a face amount equal to the principal of the note.   The note authorized the lender to apply, use, or deal with, etc., for any purpose whatsoever, the collateral pledged thereunder.   The note provided that it was nonnegotiable and that in the event of default of principal or interest the lender would look solely to the collateral pledged for payment.

The loan and pledge agreements provided that concurrently therewith the lender agreed to lend the borrower the amount of money evidenced by the collateral note, with the interest specified, and, as security for the payment of the note, the borrower pledged with lender the in-

surance policies listed and certain securities owned by borrower as specified in the collateral note. Borrower agreed to deliver to lender the insurance policies with proper assignments and the securities, but it was specified that the borrower was to remain the owner of the securities, subject to the provisions with respect thereto. The agreements provided that gains and losses on the securities while the securities were held under pledge would inure to lender, that lender guaranteed to borrower a yield of 2 percent on the securities but any yield in excess of 2 percent belonged to lender, and also made provision for what should be done upon termination of the agreement as outlined above in the summary of the self-funding loan plan. In addition the agreements directed the lender to pay to the insurance company the annual premiums on the pledged insurance as they became due. Borrower also directed lender "to reduce (by sale or otherwise) the pledged securities by the amount of such annual premium(s)." If borrower had paid the interest on the date and in the amount provided in the collateral note, lender agreed to pay such annual premiums from "the aforesaid source."

Under the assignment of life insurance policy as collateral, the owner-beneficiary assigned the specified policy to Beverly Hills, expressly agreeing that the assignee should have the sole right to collect the proceeds of the policy at death or maturity, to surrender the policy and receive the surrender value, to obtain loans on the policy and pledge the policy as security therefor, to collect all dividends on the policy, and to exercise all nonforfeiture rights permitted by the terms of the policy. In turn the assignee agreed that it would not surrender the policy until there had been a default in the liabilities of assignor to assignee, and that any balance of sums received by the assignee from the insured after payment of such liabilities would be paid by the assignee to the persons entitled thereto under the terms of the policy had the assignment not been executed.

The assignments of life insurance were filed with State Mutual and recognized by it, and thereafter it dealt with Beverly Hills in connection with the policies. Beverly Hills, by letter to State Mutual, released the dividends on the policies assigned to the owners thereof to do with as they pleased.

Beverly Hills issued to each of the petitioners a "Collateral Receipt" for the policies and the securities pledged as collateral for the loans.

Petitioners paid to Beverly Hills in the years 1959 and 1960 amounts which purported to be the amount of interest due on their respective loans from Beverly Hills, less the guaranteed yield on the securities held as collateral, as set out on interest-due statements sent to them by Beverly Hills. Typical of these interest-due statements is the follow-

ing sent to Ralph Trustman by Beverly Hills, dated December 16, 1959:

INTEREST DUE STATEMENT

*Loan No. 59–81*

| | |
|---|---:|
| Interest due_____ | $8, 360. 00 |
| Yield _____ | 3, 189. 03 |
| Net interest due_____ | 5, 170. 97 |

Collateral in the amount of $8,808.13 has been transferred to our premium account, to cover the amount due on State Mutual policies Nos. 919,310 and 920,741 due Dec. 19, 1959. Upon receipt of the above interest on or before this date, the premium will be paid, and the policy thereby maintained in force.

State Mutual sent premium notices to Beverly Hills with respect to each of the policies here involved. Typical of these notices was one relating to the annual premium due December 19, 1959, on policy No. 919310, issued on the life of Louis L. Colen, but owned by Ralph Trustman, who was also the named beneficiary. The notice indicated that the gross premium due was $4,662.75, that a current dividend of $331 was to be paid by check, leaving the net amount due as $4,662.75.

At about the same time or prior to the time the premium notices were sent, State Mutual also sent Beverly Hills, with respect to each of the policies, its form entitled "Premium Loan Information—Equity Builder." Typical of these forms and the information contained thereon is the following with respect to policy No. 919310 for the premium due December 19, 1959:

| NAME<br>Louis L. Colen | | DATE<br>10-16-59 |
|---|---|---|
| POLICY NUMBER<br>919310 | AGENCY<br>Loan Ang D | DATE PREMIUM DUE<br>12-19-59 |
| Prior premiums on the above policy were partially paid by maximum loans against the policy. | 1. ANNUAL PREMIUM DUE | $4, 662. 75 |
| | 2. LESS OPTION B DIVIDEND, IF ANY | |
| If you decide to make an additional loan, the information at the right may be used in determining the payments to be made. | 3. NET PREMIUM DUE (line 1 minus line 2) | 4, 662. 75 |
| | 4. EXISTING POLICY LOAN | 2, 646. 00 |
| | 5. TOTAL (line 3 plus line 4) | 7, 308. 75 |
| | 6. MAXIMUM LOAN VALUE | 5, 301. 00 |
| If interest on item 4 has been paid, it should be deducted from this amount → | 7. CASH FOR BALANCE OF PREMIUM (line 5 minus line 6) | 2, 007. 75 |
| | 8. CASH FOR INTEREST DUE | 252. 33 |
| | 9. TOTAL CASH REQUIRED | 2, 260. 08 |

For each year involved Beverly Hills paid to State Mutual, out of the funds paid by each petitioner to Beverly Hills, the amounts shown on line 9 of the above forms for each policy. These payments were

made by separate check for each policy drawn by Beverly Hills payable to State Mutual. Attached to these checks were statements indicating that it was in payment of the premium due on a specified policy on the life of the insured and reflecting that the total amount due was computed by deducting from the gross premium due the amount of the loan to arrive at net premium, and adding to net premium the amount of interest due. Upon receipt of the checks, State Mutual issued to Beverly Hills statements with respect to each policy similar to the premium loan information form set out above except for the information set out in the left-hand column, for which was substituted on the later statement notice that the transaction had been recorded on State Mutual's books as shown on the form. This indicated that the total amount received (with respect to policy No. 919310 for 1959—$2,260.08) had been credited by State Mutual $2,007.75 to cash balance of premium due, and $252.33 to cash for interest due.

Beverly Hills made the following payments to State Mutual with respect to the policies here involved for the years 1959 and 1960, which were reflected on Beverly Hills' general ledger accounts as "Interest Paid on Insurance Loans" and as "Premiums Paid." The total amounts paid with respect to all the policies owned by each individual borrower (purportedly from Beverly Hills) are summarized as follows:

*Beverly Hills—General Ledger Accounts*

| Owner-borrower | Interest paid on insurance loans | | Premiums paid | |
|---|---|---|---|---|
| | 1959 | 1960 | 1959 | 1960 |
| Murray and Ida Kay | $83.24 | $167.18 | $953.25 | $938.50 |
| Plastic Glide Corp | 252.33 | 486.47 | 6,972.00 | 3,133.00 |
| Saul Bolton | 245.71 | 492.57 | 3,891.50 | 3,867.50 |
| Louis L. Colen | 0 | 486.47 | 3,310.13 | 3,284.13 |
| Ralph Trustman | 730.89 | 246.23 | 5,459.88 | 1,424.38 |

The general ledger account related to policy No. 919310 reflects a total payment made by check dated December 19, 1959, in the amount of $2,260.08, charged $252.33 to interest and $2,007.75 to premium.

In some, but not all, of the transactions similar to these entered into by Beverly Hills it actually placed orders for the securities referred to in the various loan papers. Beverly Hills, for the years in issue, does not have records which will identify the transactions in which securities were purchased. It is not known whether security orders were placed for any of these petitioners. In the transactions where securities were ordered the orders were placed and executed substantially as follows. Jules Schwartz, as president of Beverly Hills, placed orders with the brokerage firm of Cantor, Fitzgerald & Co., Inc., for Treasury bills which matured in 3 to 5 days, on behalf of the person

whose name appeared on the document entitled "Collateral Note" and in the amount appearing thereon, with instructions for delivery to Gibralter Finance Corp. against payment. Gibralter was instructed to receive the securities and either sell or redeem them and apply the proceeds against the cost of the securities. Beverly Hills paid commissions on these security transactions. The securities never left the broker. Neither Beverly Hills nor any of these petitioners ever obtained physical possession of any of the securities mentioned in the loan papers.

According to its balance sheets as of March 31, 1959, Beverly Hills had assets totaling $3,282.59 and a surplus deficit of $1,017.41, and as of March 31, 1960, it had assets totaling $14,668.55 and a surplus of $6,357.55, with no amount being shown for capital.

Beverly Hills did not loan money to any of these petitioners and these petitioners did not pay any amounts to Beverly Hills as compensation to it for the use or forbearance of money during the years in issue. The source of the funds used by Beverly Hills for the checks issued by it to State Mutual was the payment in the form of interest made to it by the various petitioners.

The issue before us arises out of still another transaction arranged in an unreal manner for the purpose of obtaining a deduction for interest paid for tax purposes.[2] But these cases have a somewhat unusual twist in that prior to trial the petitioners switched their position from claiming a deduction for the entire amounts purportedly paid to Beverly Hills as interest to claiming as an interest deduction only that amount paid by Beverly Hills to the insurance company as interest on the insurance policy loans.

Petitioners deducted on their returns the entire amount they paid Beverly Hills in each year as interest on loans from Beverly Hills. In his notice of deficiency respondent determined that the entire amount claimed was not allowable because it did not, in fact, constitute interest. In their original petitions petitioners claimed they were entitled to deduct the entire amount paid to Beverly Hills. However, by amended petitions, petitioners abandoned their original positions and claimed only that they were entitled to deduct the amount of interest paid to State Mutual as interest on loans made by the insurance company to pay the premiums on the policies owned by petitioners and pledged as security for the loans. Respondent denied these claims.

The parties stipulated that Beverly Hills did not loan money to any of these petitioners and that none of the petitioners paid any amounts to Beverly Hills as compensation to it for the use or forebearance of money.

---

[2] For other such schemes see *Knetsch* v. *United States,* 364 U.S. 361; *MacRae* v. *Commissioner,* 294 F. 2d 56; *Joseph H. Bridges,* 39 T.C. 1064, and cases cited in fns. 12 and 13 to that opinion.

On brief petitioners argue that there were no valid loan or pledge agreements between petitioners and Beverly Hills, but there were valid insurance policies issued to petitioners and valid loans made by State Mutual on the security of those policies, that interest was paid on these loans each year with cash supplied by petitioners, that no valid relationship existed between petitioners and Beverly Hills except as a conduit, and that petitioners actually paid the interest to State Mutual with Beverly Hills acting merely as a conduit for these payments. Respondent, on the other hand, argues first that there was no debt due from petitioners to State Mutual upon which interest could have been paid and, second, with respect to the individual petitioners who were on the cash basis, that there was no interest actually paid on the insurance policy loans during these years because the entire amounts of cash paid to State Mutual in these years were actually in payment of the balance of premiums due.

Turning to respondent's second argument first, respondent argues that even if there was an indebtedness from petitioners to State Mutual no interest on the policy loans was actually paid by petitioners nor by Beverly Hills to State Mutual; consequently, the individual petitioners herein who were cash basis taxpayers, are not entitled to an interest deduction in the years here involved.

Respondent's argument is based on the policy loan provisions of the policies which state that at any time after the first year's premium has been paid on the policy a loan may be obtained "of a sum which, with interest, shall not exceed the loan value at the end of the policy year as shown by the accompanying table * * *, less any indebtedness to the Company under this policy, and any unpaid portion of the premium for the then current policy year."

Respondent argues from this language that the maximum loan that can be obtained is always less than the loan value and that the company always withholds interest when an additional loan is made. To illustrate this argument he reconstructs the premium loan information sheet sent by State Mutual to Beverly Hills, reproduced in the statement of facts in this opinion, as follows:

| | | |
|---|---:|---:|
| Annual premium | | $4, 662. 75 |
| Existing loan | | 2, 646. 00 |
| Total due | | 7, 308. 75 |
| Maximum loan value | $5, 301. 00 | |
| Less interest (in accordance with policy terms) | 252. 30 | |
| Maximum loan | | 5, 048. 67 |
| Cash required | | 2, 260. 08 |

The fallacy in this argument is that respondent places his own interpretation on what the total cash paid was applied to, which is different from the interpretation placed thereon by both the borrower and the lender. While it could be said that the cash payment made was applied all to premium or part to premium and part to interest, it is clear from the insurance company's statement referred to above and the records of Beverly Hills that both the borrower and the lender considered that a part of the cash payment was applied to interest and they so treated it on their records. Respondent may not disregard the actual application of the funds by the parties without some basis for doing so.

We do not believe the provision in the contract quoted above requires that the insurance company withhold interest. It simply provides that interest may be withheld but there is no reason this should prevent the borrower from paying interest in cash and applying the entire loan value in payment of premiums. This appears to have been done here. Furthermore, if interest was not paid in cash, the terms of the policy would require that it be added to the principal of the loan and that interest thereafter would have to be paid upon interest. There would be no reason for the borrower to pursue this policy if the annual payments he was required to make in cash exceeded the amount of interest due in any event. In addition, from what evidence we do have in this case it appears that the maximum loan value was applied for during the first year of these policies and that no interest was added thereto in computations made by the insurance company in sending out the next year's premium and loan information to State Mutual. We conclude that interest on these policy loans was paid in cash in each of the years here involved.

Having so concluded, we turn next to the question of whether the interest paid is deductible by petitioners.

A deduction is allowed under section 163(a), I.R.C. 1954, for "all interest paid or accrued within the taxable year on indebtedness." "Interest" has been defined as amounts paid for the use or forbearance of money. *Deputy* v. *du Pont*, 308 U.S. 488. To justify a deduction for interest it must be shown that there was a bona fide indebtedness, *Joseph H. Bridges*, 39 T.C. 1064, affd. 325 F. 2d 180, that the indebtedness was that of the taxpayer, *George D. Mann*, 33 B.T.A. 281, and that there was a liability to pay interest, *Howell Turpentine Co.*, 6 T.C. 364, reversed on other issues 162 F. 2d 316.

Here there can be no question that "interest" was paid to State Mutual on a bona fide loan and that there was an obligation to pay interest. Respondent does not dispute this—his argument is that petitioners made payments only to Beverly Hills; that these payments admittedly did not constitute interest within the intendment of the

statute, and that petitioners made no payments of interest to State Mutual, were not indebted to State Mutual, and had no obligation to pay interest to State Mutual. Respondent's position seems to be that, despite the unreality of the transactions as between petitioners and Beverly Hills, nevertheless the policies were assigned to Beverly Hills, Beverly Hills had authority to and did borrow on the policies, and Beverly Hills was obligated to and did pay the interest on the policy loans.

It seems to us that respondent is attempting to carry water on both shoulders; that he would have us look to substance rather than form to determine that petitioners did not pay interest to Beverly Hills, but would have us look to form rather than substance to determine that it was Beverly Hills rather than petitioners who paid interest to State Mutual on the policy loans. But despite the fact that petitioners obviously entered into these transactions in an effort to convert non-deductible premium payments into deductible payments of interest, we do not believe we would be justified in ignoring the form of the transactions for one tax purpose and holding petitioners to it for another tax purpose. We must look to the substance of the entire transactions and if in substance petitioners paid interest on a bona fide indebtedness which they were obligated to pay, they are entitled to deduct those amounts as interest.

Respondent agrees that petitioners owned the policies, that bona fide loans were obtained on the policies to pay the premiums on the policies, and that interest actually paid on such loans is deductible.[3] We have determined that interest on these loans was paid in cash by Beverly Hills to State Mutual, and the parties have stipulated that all amounts paid by Beverly Hills to State Mutual were paid with funds received by Beverly Hills from petitioners.

Eliminating from the form of the transaction the facade of a debtor-creditor relationship between petitioners and Beverly Hills, which both parties now agree was a sham, we find that in substance petitioners bought life insurance policies from State Mutual and borrowed the cash surrender or loan value to pay a part of the premiums each year and paid the balance of the premium due, plus interest, to State Mutual in cash, using Beverly Hills as their agent or as a conduit for the amounts paid. Absent a loan from Beverly Hills to petitioners, there was no reason for, and nothing to support, a pledge and assignment of the policies by petitioners to Beverly Hills except to act as their agent in carrying out the self-funding life insurance plan. The payments of the balance of premiums due and interest resulted in giving

---

[3] Sec. 264(a)(3), I.R.C. 1954, which denies a deduction for interest paid on an indebtedness incurred to purchase or carry a life insurance contract pursuant to a plan which contemplates the systematic borrowing of part or all of the increases in cash value of the contract, applies only to contracts purchased after Aug. 6, 1963.

the owners of the policies life insurance protection on the lives of the insureds to the extent that the face amount of the policies exceeded the cash or loan values. Thus the payments of premiums on the policies inured to the benefit of petitioners, as did the policy loans used to pay part of those premiums. If petitioners wanted to continue this protection it was necessary for them to authorize the premium loans and pay the balance of the premiums due plus interest on the loans. This they did through Beverly Hills.

The obligation on insurance policy loans is unique in that the insurance company looks to the cash surrender value of the policy to pay the loan and interest and no true personal liability arises against the borrower. However, we recognized in *J. Simpson Dean*, 35 T.C. 1083, that by making the loans the owner of the policy becomes obligated in a sense to pay interest thereon, and that such obligation is sufficient to qualify it as deductible interest for income tax purposes because such interest is in fact and in law a charge against his rights in the policies. The *Dean* case is support for the conclusion that the beneficial owners of a policy are entitled to deduct interest on policy loans; and here, unlike in the *Dean* case, the petitioners continued to be the beneficial owners of the policies throughout the years involved.

Had petitioners dealt directly with State Mutual without the unrealistic intervention of Beverly Hills, we know of no reason why they would not be entitled to deduct the interest paid on the policy loans.[4] We find that in substance this is what happened, and the fact that Beverly Hills was used as a conduit for the payment of the interest on the policy loans and the balance of the premiums due should not deprive petitioners of their right to deduct actual payments of interest made by them on indebtedness incurred with respect to policies owned by them. We so hold. Cf. *Louis Adler Realty Co.*, 6 T.C. 778; *George D. Mann, supra.*

While decisions such as *Knetsch* v. *United States*, 364 U.S. 361; *Joseph H. Bridges, supra;* and *MacRae* v. *Commissioner*, 294 F. 2d 56, might be authority for disallowing the deductions for interest originally claimed by petitioners for all payments made to Beverly Hills, we are here concerned with interest payments made to State Mutual, and there is no argument that these payments, if paid in cash, were not bona fide payments of interest. Hence those cases are not controlling here. Likewise, the fact that Beverly Hills also claimed deductions for the interest paid to State Mutual is not controlling.

Because of the concessions made by petitioners,

*Decisions will be entered under Rule 50.*

---

[4] See fn. 3. See also committee reports with respect to sec. 215(a) of the Revenue Act of 1964, H. Rept. No. 749, 88th Cong., 1st Sess., p. 61, and S. Rept. No. 830, 88th Cong., 2d Sess., p. 77, wherein it was recognized that such interest was presently deductible.