Ellis **CAMPBELL**, **Jr.**, **District Director of Internal Revenue**, **Appellant**,

v.

**CEN–TEX**, **INC.**, **Appellee**.

No. 23014.

United States Court of Appeals Fifth Circuit.

April 26, 1967.

Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, I. Henry Kutz, Jonathan S. Cohen, Attys., Dept. of Justice, Washington, D. C., Melvin M. Diggs, U. S. Atty., Abilene, Tex., for appellant, Martha Joe Stroud, Asst. U. S. Atty., of counsel.

A. E. Aikman, J. J. French, Jr., of Locke, Purnell, Boren, Laney & Neely,

Dallas, Tex., for appellee, Frederick H. Stone, Springfield, Ill., of counsel.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge:

The appellee, Cen-Tex, Inc., claimed interest deductions in computing its income tax for its fiscal years ending April 30, 1961, and April 30, 1962. The claimed deductions were disallowed, deficiency assessments were made and paid, claims for refund were filed and disallowed, and an action for a refund was brought. The district court entered judgment for the taxpayer. The District Director has appealed.

There are no differences between Cen-Tex and the Internal Revenue Service as to the happenings out of which this controversy arose. The material facts were stipulated. During the tax years the Hellinghausen family owned all of the stock of Cen-Tex in the following percentages:

| | |
|---|---|
| William G. Hellinghausen | 55% |
| Donald M. Hellinghausen | 20% |
| Robert F. Hellinghausen | 20% |
| Elizabeth Hellinghausen Hoffman | 5% |

William, his wife Kathleen, their sons Donald and Robert and their daughter Elizabeth made up the Board of Directors and were the management personnel [1] of their company. During the fiscal year ending June 30, 1961, Cen-Tex, during the first of the two tax years, adopted a deferred compensation plan providing that in the event of the death of William, Donald or Robert, Cen-Tex would pay $750 per month to the surviving spouse or lineal descendants of the decedent for a period of ten years. By a stock option and redemption agreement dated June 7, 1961, the stockholders gave Cen-Tex a right of refusal of any stock they might desire to sell. The agreement contained provisions obligating the company to purchase and redeem, at book value, the stock of any deceased stockholder.

Cen-Tex decided to meet the obligations which it had undertaken by the deferred compensation plan and the stock purchase agreement by the purchase of insurance on the lives of the five Hellinghausens. Applications were made to Franklin Life Insurance Company. William was found to be uninsurable and a policy on his life owned by him was purchased and taken over by Cen-Tex. Franklin issued policies, dated April 17, 1961, and issued about that date, payable to Cen-Tex, on the lives of Donald, Robert, Kathleen and Elizabeth. The death benefits under the policies increased substantially, year by year, for twenty years. Premiums were substantially greater during the first twenty years than thereafter. The increased premiums gave to the policies additional death benefits and larger loan values. Cen-Tex paid the first annual premium on each policy and prepaid the next four annual premiums, discounted at three per cent. Cen-Tex then borrowed the loan value on each of the policies at a four per cent rate. The following year Cen-Tex prepaid another annual premium on each policy and made additional policy loans to the extent of the increased loan values. Interest was paid on the policy loans.

The district court held that the prepayment of premiums, the borrowing of loan values and payment of interest had a very real and discernible substantial business purpose. It held that the interest payments were, in economic substance and actuality, the payment of interest and were not the equivalent of, or in substance, the premium cost of the insurance protection afforded by the policies. The district court decided that the interest payments were not sham in fact or in law, but were for the use or forbearance of money and as such were deductible for income tax purposes during the tax years in question.

---

1. Elizabeth was active in management during the second, but not the first, of the tax years.

The subject of initial inquiry should be the effect of Congressional enactments. The Internal Revenue Code of 1939, as amended in 1942, had specific provisions denying deductions for interest paid or accrued on indebtedness incurred or continued to purchase or continue a single premium life insurance or endowment contract. There was a proviso that the payment of substantially all premiums within four years from the purchase would be considered a single premium. 26 U.S.C.A. (I.R.C.1939) § 24(a) (6) as amended by Internal Revenue Act of 1942 § 129. The Internal Revenue Code of 1954 carried forward the prior provisions.[2] Amounts of interest paid or accrued to pay or carry an annuity contract were included in deductions to be disallowed. The 1954 provision treats as a single premium contract one where a deposit is made to pay a substantial number of future premiums, as well as where substantially all of the premiums are paid within the first four years of the contract. Section 264 of the Internal Revenue Code of 1954, as originally enacted, note 2 supra, is the statute in force when the insurance policies were issued and during the tax years of Cen-Tex which are here involved. By the Revenue Act of 1964, it was provided, with certain exceptions which need not be mentioned, that with respect to contracts purchased after August 6, 1963, no deduction shall be allowed for any amount paid or accrued on indebtedness incurred or continued to purchase or carry a life insurance, endowment or annuity contract (other than a single premium contract or a contract treated as a single premium contract) pursuant to a plan of purchase which contemplates the systematic direct or indirect borrowing of part or all of the increases in the cash value of such contract. 26 U.S.C.A. § 264(a) (3).

■ The interest deduction claimed by Cen-Tex was not prohibited by statute. The loophole, of which Cen-Tex attempted to avail itself, was not Congressionally plugged until the passage of the 1964 Act. In the consideration of this measure the Congress believed it was intended to make a change in the law and to deny an interest deduction which was previously available.[3] Unpublished

2. (a) General rule.—No deduction shall be allowed for—
 \*  \*  \*  \*  \*
 (2) Any amount paid or accrued on indebtedness incurred or continued to purchase or carry a single premium life insurance, endowment, or annuity contract.
 Paragraph (2) shall apply in respect of annuity contracts only as to contracts purchased after March 1, 1954.
 (b) Contracts treated as single premium contracts.—For purposes of subsection (a) (2), a contract shall be treated as a single premium contract—
 (1) if substantially all the premiums on the contract are paid within a period of 4 years from the date on which the contract is purchased, or
 (2) if an amount is deposited after March 1, 1954, with the insurer for payment of a substantial number of future premiums on the contract. 26 U.S.C.A. (I.R.C.1954) § 264(a) (2).
3. Under existing law, no interest deduction is allowed in the case of indebtedness incurred or continued to purchase, or carry, a single premium life insurance, endowment, or annuity contract. In addition, if substantially all the premiums on a contract are paid within 4 years of the date on which the contract was purchased, the contract is treated as if it was a single premium contract for purposes of this provision. Similarly, where a purchaser borrows an amount equal to a substantial portion of the premium payments on a contract, but, instead of purchasing the policy outright, deposits the borrowed funds with the insurance company for future payments on a policy, this also is treated as if it was a single premium contract and the interest deduction on the indebtedness relating to the contract is denied. However, under present law, no interest deductions are denied where the taxpayer purchases an insurance contract with the intention of borrowing the maximum amount on the contract each year, unless the contract fails in one of the categories described above.
 \*  \*  \*  \*  \*
 Your committee has amended the provision so that it will apply only to contracts purchased after December 31, 1963, to bring this provision into line with the general effective dates provided in this bill for structural changes. In any event

rulings, repudiated by the Commissioner subsequent to issuance, authorized deductions. Commentators so construed the law.[4] The Tax Court seemingly has given credence to the Congressional construction and permitted interest deductions to be allowed in a situation not dissimilar to the case here on appeal. Kay v. Commissioner of Internal Revenue, 44 T.C. 660. This Court has spoken for the taxpayer. United States v. Bond, 5th Cir. 1958, 258 F.2d 577. While there is no doubt as to the authority wielded by the legislative history of an act of Congress, its views interpreting prior legislation are scarcely persuasive. United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334. The Commissioner is not bound by his unpublished rulings, except to the taxpayers for whom they were made. Bookwalter v. Brecklein, 8th Cir. 1966, 357 F.2d 78; Minchin v. Commissioner of Internal Revenue, 2nd Cir. 1964, 335 F.2d 30. We are told that the *Kay* decision of the Tax Court has been ignored as a precedent. The *Bond* decision of this Court is no longer stare decisis. United States v. Salley, 5th Cir. 1961, 290 F. 2d 708.

There was a time when Congressional action was generally required to plug those loopholes in the Federal revenue acts which permitted tax avoidance. Now, in no small measure, *Knetsch*[5] is availed of by the Internal Revenue Service as a thumb-in-the-dike to thwart the use of tax escape devices. Karl F. Knetsch, in 1953 at the age of sixty, purchased from an insurance company ten 30-year maturity deferred annuity savings bonds, each in the amount of $400,000, bearing 2½ per cent interest. The purchase price was $4,004,000 which was paid by Knetsch's check for $4,000 and his nonrecourse notes for $4,000,000 bearing 3½ per cent interest. This interest for the first year, $140,000, was required to be, and was, paid in advance. This increased the loan value by $99,000 which Knetsch promptly borrowed, giving a check for $3,465, a year's advance interest. In the three succeeding years interest was paid and the loan values were borrowed. If the loans had been repaid, Knetsch would have been entitled at the maturity of the bonds, when he would have been 90 years old, to a monthly payment of $90,171. If, however, he had continued to borrow and to pay interest the value of the contracts, at their maturity, would be $1,000 which would have produced an annuity of $43 per month to sustain him during his declining years. In his income tax returns for 1953 and 1954[6] Knetsch claimed interest deductions for the amounts paid at interest during those years. The deduction was disallowed by the Commissioner and paid by Knetsch who sued for a refund. The judgment of the district court was affirmed by the Court of Appeals. Knetsch v. United States, 9th Cir. 1959, 272 F.2d 200. Because of a suggested conflict with the *Bond* decision, supra, of this Court, the Supreme Court granted certiorari. The Court held that the indebtedness created by the borrowings was fictional, and in reality a rebate of a substantial part

---

both the House provision and the provisions as amended by your committee will only affect contracts entered into after the specified date and will have no effect on contracts entered into before that date even in the case of borrowings on such a contract in the future. S.Rep. 830, 88th Cong. 2d Sess., 1 U.S.Code Cong. & Adm.News 1964, pp. 1673, 1750–1751.

4. Under the old law an individual who borrows to pay premiums on his life insurance can deduct the interest on his borrowings. When the individual borrows the cash values of the policy from the insurance company and pays the balance of the premiums from his own pocket, it is called a minimum deposit plan. If the insured borrows from a bank in an amount equal to the cash values of the policy, with said policy as collateral or security, it is known as a bank loan plan. Lyons, Interest Deductions on Financed Insurance Under New Tax Law, 42 Taxes (November 1964) 751.

5. Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128.

6. The bonds were surrendered and cashed in 1956. Interest paid in 1955 and 1956 was not involved in the litigation.

of the so-called interest payments. The annuity contracts were likewise fictional because their value was reduced to and, by the annual borrowings, kept at "the relative pittance" of $1,000. The transaction did not, said the Court, appreciably affect his beneficial interest except to reduce the tax. Nothing of substance was to be realized by him beyond a tax deduction. The sums retained by the insurance company were said to be its fee for providing the facade of "loans" for the attempt at tax reduction. The transaction was determined by the Court, with three judges dissenting, to be a sham.

It is contended here that the Cen-Tex transaction was sham as has been successfully contended in many other situations [7] where interest deductions were claimed in transactions involving the purchase or carrying of annuity or insurance contracts similar to those in the *Knetsch* case. There are differences between the Cen-Tex transactions and those of *Knetsch* and the other cited cases. Note 7 supra. Our initial inquiry is whether those factual differences are such as to show an economic substance or business purpose [8] or a purposive activity [9] such as will permit or require an affirmance of the district court's conclusion that the Cen-Tex loan and interest payment transactions were not sham. The Supreme Court left the door, not open, but ajar [10] in *Knetsch*

by saying: "There may well be single premium annuity arrangements with nontax substance which create an 'indebtedness' for the purposes of * * * § 163(a) of the 1954 Code." [11] So also, it follows, there may be allowable interest deductions pursuant to life insurance arrangements (prior to August 6, 1963) where systematic borrowing of increases in cash values is contemplated.

Cen-Tex and the Government have stipulated that the insurance policies in this case were procured to assist in meeting the obligations of Cen-Tex under its deferred compensation plan and its obligations under the stock option and redemption agreement as well as for the general objective of having insurance upon its key employees and stockholders. Thus there was a bona fide business purpose and an economic objective to be served by the insurance. The Knetsch situation of nothing to be realized but a tax reduction is not present. In *Knetsch* the nominal value of the annuity contracts was four million dollars with an all time real value, assuming borrowings continued throughout the thirty year period, of a thousand dollars. In the policies issued to Cen-Tex, the net death benefits after offsetting loans would increase at the end of twenty years, with maximum loans at all times being made, from $250,000 to $485,000 in the case of Donald, from $250,000 to $431,000 in the case of Robert, and from $100,000 to

7. See e.g. Minchin v. Commissioner of Internal Revenue, 2nd Cir. 1964, 335 F.2d 30; Ballagh v. United States, Ct.Cl. 1964, 331 F.2d 874, 166 Ct.Cl. 191, cert. den. 379 U.S. 887, 85 S.Ct. 157, 13 L.Ed.2d 92; Carpenter v. Commissioner of Internal Revenue, 3rd Cir. 1963, 322 F.2d 733, cert. den. 375 U.S. 992, 84 S.Ct. 631, 11 L.Ed.2d 478; Pierce v. Commissioner of Internal Revenue, 9th Cir. 1962, 311 F.2d 894, cert. den. 373 U.S. 912, 83 S.Ct. 1302, 10 L.Ed.2d 413; Diggs v. Commissioner of Internal Revenue, 2nd Cir. 1960, 281 F.2d 326, cert. den. 364 U.S. 908, 81 S.Ct. 271, 5 L.Ed.2d 224; Weller v. Commissioner of Internal Revenue, 3rd Cir. 1959, 270 F.2d 294, cert. den. 364 U.S. 908, 81 S.Ct. 269, 5 L.Ed.2d 223; McLane v. Commissioner of Internal Revenue, 46 T.C. 140.

8. Cf. Diggs v. Commissioner of Internal Revenue, n. 7 supra.

9. "Purposive activity"—a new talisman apparently carved out of the same impervious material as the Supreme Court's "facade" in Knetsch. Goldstein v. Commissioner of Internal Revenue, 2nd Cir. 1966, 364 F.2d 734, cert. den. 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543.

10. See Atwood Hatcheries v. Heisdorf & Nelson Farms, 5th Cir. 1966, 357 F.2d 847; Dooly v. Payne, 5th Cir. 1964, 326 F.2d 941.

11. There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. 26 U.S. C.A. § 163(a).

$155,000 in the case of Elizabeth. Because of Kathleen's age, the net death benefit on her policy would have decreased from $100,000 to $60,000.[12] In addition to net benefit accruals, the policies would have, at the end of twenty years, with maximum loans effected, cash surrender values in excess of $200,000. These potential death benefits and cash surrender values cannot be brought within the Knetsch characterization of a "relative pittance." It cannot be denied that the tax incidence was important to Cen-Tex and an inducement to casting the transactions into the form which they took. But for Cen-Tex it must be said that the tax saving result of the transaction was not the sole motive and purpose for entering into it.[13] The policies purchased provided for a beneficial interest.[14] The transaction was not without economic value,[15] economic significance,[16] economic substance,[17] or commercial substance.[18] None of the Knetsch touchstones which can be applied to the transaction show it to be a sham. This being so, it follows that the district court properly held that the transaction was not sham and that the claimed deduction for interest should have been allowed.

The Government devotes some portion of its brief and argument to an effort to show that the policies here are "term policies in actual substance" and hence the interest payments are nondeductible premiums. Perhaps the Government has a broader definition of term insurance than is generally used. A term policy of life insurance is one which is issued for a limited and specified period with benefits payable only if death occurs within the period. Term policies do not,

generally, have reserve values. 1 Richards on Insurance 5th Ed. 53, § 14. The policies purchased by Cen-Tex were not policies of term insurance.

The Government urges that when Congress amended Section 264 in 1964 and expressly denied interest deductions in cases such as this, it did not intend to authorize interest deductions in prior years if the interest was paid in a sham transaction. We need not disagree with the Government's position.[19] Since we agree with the district court that the transaction was not sham, the principle need not be developed nor expounded.

As another string to its bow the Government uses the provision of the 1954 Code which disallows deductions for interest paid or accrued on indebtedness incurred or continued to purchase or carry insurance if an amount is deposited with the insurer for payment of a substantial number of future payments. The Government does not urge that substantially all of the premium payments were paid and could not well do so in view of the acquiescence[20] of the Commissioner in Dudderar v. Commissioner of Internal Revenue, 44 T.C. 632, where it was held that 73 per cent of premiums paid on an insurance policy was less than substantially all. Neither the statute nor its legislative history indicates what was in the Congressional mind when it used the phrase "substantially all." We may indulge in the surmise that the ambiguity was deliberate so that the courts, by the case after case process of judicial interpretation, would be permitted

"* * * to distinguish and divide
A hair 'twixt south and south-west side."[21]

12. The net benefit figures are in round numbers.

13. Cf. Weller v. Commissioner of Internal Revenue, n. 7 supra.

14. Pierce v. Commissioner of Internal Revenue, n. 7 supra.

15. Carpenter v. Commissioner of Internal Revenue, n. 7 supra.

16. Pierce v. Commissioner of Internal Revenue, n. 7 supra.

17. Diggs v. Commissioner of Internal Revenue, n. 7 supra; McLane v. Commissioner of Internal Revenue, n. 7 supra.

18. Weller v. Commissioner of Internal Revenue, n. 7 supra.

19. Knetsch v. United States, supra.

20. I.R.B. 1966—36 p. 7.

21. Butler, Hudebras.

For its tax year ending April 30, 1962 Cen-Tex paid only one annual premium on each of the insurance contracts. One premium would hardly be regarded as a substantial number of premiums. In the tax year ending April 30, 1961, Cen-Tex paid five annual premiums on each of the policies. But of these, only four could be said to be deposits for future payments.

The word "number" gives us no trouble. The application of it only requires a knowledge of counting. The qualifying "substantial" calls for a different kind of rationalizing. "Substantial" is a relative term.[22] It can be related, in the context of this case, only to the entire number of future payments which would normally be required to keep the insurance contracts in effect until they matured upon the death of those insured. The expectancy [23] of Donald was 38 years, of Robert 34 years, of Elizabeth 32 years and of Kathleen 14 years. The question, as best we can state it, is whether four is a substantial number when related to 38, 34, 32, and 14. The district court determined that "The prepayment of four premiums * * * did not constitute the deposit of an amount for payment of a 'substantial number' of future payments under the terms of the policies and the circumstances of this case." We cannot say that there is error in this determination. In so holding we do not intend to fix any limits or state any formula within which "substantial number" is to be applied. The rule, if one is to be developed by the judicial process, should be ad hoced, case by case,[24] rather than pronounced by judicial fiat. There has been an approval of an administrative figure of 20 per cent as a "substantial portion" under the Fair Labor Standards Act,[25] with the question left undecided upon a Supreme Court reversal.[26] In construing another section of the Internal Revenue Act, this Court has held that, under the facts of particular cases, 33 per cent was "a substantial part," [27] while in a similar case 17 per cent was held not to be "a substantial part." [28]

We conclude that none of the contentions of the appellant require reversal. The judgment of the district court is free from prejudicial error and is

Affirmed.

22. Heft v. Commissioner of Internal Revenue, 5th Cir. 1961, 294 F.2d 795; Commissioner of Internal Revenue v. Kelley, 5th Cir. 1961, 293 F.2d 904.

23. 1958 Commissioners Standard Ordinary Mortality Table.

24. See 10 East 40th Street Building v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806.

25. Callus v. 10 East Fortieth Street Building, 2nd Cir. 1944, 146 F.2d 438.

26. 10 East 40th Street Building v. Callus, n. 24 supra.

27. Commissioner of Internal Revenue v. Kelley, note 22 supra.

28. Heft v. Commissioner of Internal Revenue, note 22 supra.