[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-11828
_____

Tax Court No. 05382-97

WINN-DIXIE STORES, INC. AND SUBSIDIARIES,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeal from a Decision of the United States Tax Court
_____

**(June 28, 2001)**

Before WILSON and COX, Circuit Judges, and RYSKAMP*, District Judge.

PER CURIAM:

_____

* Honorable Kenneth L. Ryskamp, U.S. District Judge for the Southern District of Florida, sitting by designation.

Winn-Dixie Stores, Inc. appeals the tax court's judgment resting on the conclusion that Winn-Dixie was not entitled to deduct interest and fees incurred in borrowing against insurance policies that it owned on the lives of more than 36,000 Winn-Dixie employees. We affirm.

*Background*

In summary, the tax court found the following facts: In 1993, Winn-Dixie embarked on a broad-based company-owned life-insurance (COLI) program whose sole purpose, as shown by contemporary memoranda, was to satisfy Winn-Dixie's "appetite" for interest deductions. Under the program, Winn-Dixie purchased whole life insurance policies on almost all of its full-time employees, who numbered in the tens of thousands. Winn-Dixie was the sole beneficiary of the policies. Winn-Dixie would borrow against those policies' account value at an interest rate of over 11%. The high interest and the administrative fees that came with the program outweighed the net cash surrender value and benefits paid on the policies, with the result that in pretax terms Winn-Dixie lost money on the program. The deductability of the interest and fees posttax, however, yielded a benefit projected to reach into the billions of dollars over 60 years. Winn-Dixie participated until 1997, when a change in tax law jeopardized this tax arbitrage, and it eased its way out.

The IRS determined a deficiency because of the interest and fee deductions taken in Winn-Dixie's 1993 tax year. Winn-Dixie challenged the determination before the tax court. The tax court rejected Winn-Dixie's assertions that the COLI program had a business purpose, or that Congress had expressly authorized its tax benefits. *See Winn-Dixie Stores, Inc. v. Comm'r*, 113 T.C. 254 (1999). The court held that the loans against the policies were substantive shams, and that Winn-Dixie was therefore not entitled to deductions for the interest and fees paid for the loans. Winn-Dixie appeals.

Winn-Dixie's two core arguments here are the same as those it made to the tax court. The first is that Congress, through the Internal Revenue Code, explicitly authorized the deduction of interest and fees incurred in certain borrowing against whole life-insurance policies' account value. This explicit permission, Winn-Dixie says, makes application of the sham-transaction doctrine inappropriate. In the alternative, Winn-Dixie argues that even if the sham-transaction doctrine properly applies here, the tax court misinterpreted the economic-substance and business-purpose prongs of that doctrine and thus "shammed" a transaction that was due respect. Winn-Dixie does not dispute any finding of historical fact; these issues are exclusively ones of law, and our consideration of them is accordingly de novo. *United Parcel Serv. of Am., Inc. v. Comm'r*, ___ F.3d ___, ___ (11th Cir. 2001).

3

*Discussion*

Winn-Dixie starts its argument by invoking the special treatment afforded life insurance contracts (as defined in I.R.C. § 7702) in general, whose benefits are generally untaxed and whose appreciation is tax-deferred. *See* I.R.C. §§ 101(a)(1), 72(e).[1] That treatment extends to loans made against a policy, whose interest (unlike most other (nonconsumer) interest, I.R.C. § 163(a)) is generally not deductible. *See* I.R.C. §§ 264(a)(3). But there is an exception (called the 4-of-7 exception) to this prohibition on deducting interest on policy loans; the prohibition does not apply if no part of the annual premium is financed by a policy loan in four of the first seven years. *See* I.R.C. § 264(c)(1). Winn-Dixie's loans fell within the 4-of-7 exception, all agree. Because they qualify for the exception, and because the loans are within the specially treated world of life insurance that has obviously been the subject of congressional attention, Winn-Dixie contends, there is no room for application of the sham-transaction doctrine.

This argument may have some force, but it runs into binding precedent. The Supreme Court was faced with a materially similar argument decades ago by a taxpayer who sought to deduct interest payments on loans taken against an annuity

---

[1]     We follow Winn-Dixie's practice of consistently citing to the statutes in effect during the pertinent tax year, 1993. The use of the present tense to describe 1993 provisions is for convenience and does not imply that they are still in effect.

contract. *See Knetsch v. United States*, 364 U.S. 361, 363, 81 S. Ct. 132, 133-34 (1960). Because, as here, the annuity contract was obviously being used as a tax shelter, and as used offered the taxpayer no financial benefit other than its tax consequences, the Court held that the indebtedness was not bona fide, and the interest not deductible under § 163(a). *See id.* at 366, 81 S. Ct. at 135. Along the way, the Court rejected an argument based on § 264 that is at least a cousin of Winn-Dixie's present contention. Knetsch argued that Congress's failure to close a loophole in § 264 (that section's prohibition of deductions on indebtedness to purchase life-insurance policies did not extend to annuities until 1954, the year after the tax year in question) equated to blessing the loophole. The Court declined to attribute such an intention to Congress, because that would "exalt artifice above reality." *Id.* at 367, 81 S. Ct. at 136 (quoting *Gregory v. Helvering*, 293 U.S. 465, 470, 55 S. Ct. 266, 268 (1935)). *Knetsch* holds, therefore, that the sham-transaction doctrine does apply to indebtedness that generates interest sought to be deducted under § 163(a), even if the interest deduction is not yet prohibited by § 264. That is a holding that we have followed in this circuit. *See Campbell v. Cen-Tex, Inc.*, 377 F.2d 688, 692 (5th Cir. 1967) (applying the sham-transaction doctrine to deduction of interest on insurance-policy loans, but finding economic substance).

Winn-Dixie tries to get around *Knetsch* with the argument that we have 33 more years (as of 1993) of congressional regulation of interest deductions in this context, and that 33-year history shows that Congress does not want courts to look behind facial compliance with, for instance, the 4-of-7 exception. It may well be that *Knetsch* was then, and this is now, but we are not the court to make that call. *Knetsch*'s holding is at best undermined by congressional action (or inaction) in the intervening decades, and it is up to the Supreme Court, not us, to determine when the Court's holdings have expired. *See Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017 (1997). We therefore must conclude that the tax court properly examined the transaction under the sham-transaction doctrine.

That doctrine provides that a transaction is not entitled to tax respect if it lacks economic effects or substance other than the generation of tax benefits, or if the transaction serves no business purpose. *See United Parcel Serv.*, ___ F.3d ___ at ___; *Kirchman v. Comm'r*, 862 F.2d 1486, 1492 (11th Cir. 1989). The doctrine has few bright lines, but "[i]t is clear that transactions whose sole function is to produce tax deductions are substantive shams." *Kirchman,* 862 F.2d at 1492. That was, as we read the tax court's opinion, the rule the tax court followed. Nor did the court misapply the rule in concluding that the broad-based COLI program had no "function" other than generating interest deductions.

The tax court found, without challenge here,[2] that the program could never generate a pretax profit. That was what Winn-Dixie thought as it set up the program, and it is the most plausible explanation for Winn-Dixie's withdrawal after the 1996 changes to the tax law threatened the tax benefits Winn-Dixie was receiving. No finding of the tax court suggests, furthermore, that the broad-based COLI program answered any business need of Winn-Dixie, such as indemnifying it for loss of key employees. Nor could it have been conceived as an employee benefit, because Winn-Dixie was the beneficiary of the policies. Under *Kirchman*, therefore, the broad-based COLI program lacked sufficient economic substance to be respected for tax purposes, and the tax court did not err in so concluding.

*Conclusion*

For the foregoing reasons, the judgment of the tax court is affirmed.

AFFIRMED.

---

[2] Winn-Dixie disclaims any intent to challenge the tax court's fact findings and asks for a de novo standard of review. (Blue Br. at 13, 39.) We therefore read Winn-Dixie's arguable challenges to this finding of historical fact as disagreement with the rule stated in *Kirchman*. That challenge is, of course, unavailing.

8