FILED
United States Court of Appeals
Tenth Circuit

September 2, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BILL S. MCGOWEN; CAROLYN M.
MCGOWEN,

      Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 10-9000
(United States Tax Court)
(No. 14116-07)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

The Commissioner of Internal Revenue assessed an income tax deficiency of

$171,631 against Bill and Carolyn McGowen for the 2004 tax year. He determined the

taxpayers' joint federal income tax return mischaracterized proceeds from the termination

of a life insurance contract as a discharge of a debt and therefore improperly excluded the

gain from the taxpayers' income. The United States Tax Court upheld the

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

Commissioner's deficiency determination, concluding the proceeds from the termination of the policy were income from a life insurance contract pursuant to 26 U.S.C. § 72(e) and the McGowens were required to report the gain as income. We affirm.[1]

## BACKGROUND

On May 30, 1986, Carolyn McGowen purchased a variable life insurance policy on her life for a single premium of $500,000.[2] The premium funds were to be invested and the gains added to increase the policy's value over time. The policy allowed her to borrow against its value, using only the policy as security. The insurance company, however, could terminate the policy if the policy debt exceeded its cash value.

By February 28, 2004, Carolyn's debt on the policy ($1,064,784.86)[3] exceeded its cash surrender value by $2,038.82. Due to the negative balance, the insurance company sent a notice to Carolyn advising the "outstanding debt on [her] variable life insurance ha[d] now exceeded its cash value." (R. Ex. 15-J) The notice gave her until March 30, 2004, to make a minimum loan repayment of $108,313.42 if she wished to keep the policy active. If she did not make a payment, the insurance company would terminate the policy on that date. It also read:

> Termination of your policy coverage will result in a taxable event. Any deferred gain in the policy will be reported to you and the [IRS] on a Form 1099-R. As of February 28, 2004, the taxable gain is $562,746.04.

---

[1] Our jurisdiction derives from 26 U.S.C. § 7482(a)(1).

[2] The parties submitted the case to the tax court on a fully stipulated set of facts, with attached joint exhibits.

[3] According to the policy, debt is the sum of all outstanding loans plus accrued interest.

(R. Ex. 15-J.) She did not make the required minimum payment.

On March 30, 2004, the insurance company sent a letter informing Carolyn of the cancellation of the policy and the filing of an "IRS Form 1099-R reporting the total gain on this policy - - $565,224.11." (R. Ex. 16-J) Subsequently, the McGowens received a Form 1099-R from the insurance company; it reported a gross distribution of $1,065,224.11 and a taxable amount of $565,224.11 (after subtracting the $500,000 premium paid). Nevertheless, the McGowens filed a 2004 joint federal income tax return claiming the $565,224.11 was not income attributable to the termination of a life insurance contract, but a discharge of indebtedness excludable from gross income by 26 U.S.C. § 108 due to insolvency outside of bankruptcy. The McGowens' net worth on the date of the cancellation, apart from the policy, was "$3,701.20." (R. Ex. 18-J.)

In response to the McGowens' 2004 joint filing, the Commissioner issued a statutory notice of tax deficiency in the amount of $171,631. The claimed deficiency resulted from the tax due on the $565,224.11 in income resulting from the cancellation of the life insurance policy.

The McGowens timely filed a petition with the tax court claiming the $565,224.11 was discharged indebtedness excludable from gross income due to their insolvency. The tax court disagreed. It explained the life insurance company did not discharge the policy debt of Carolyn's life insurance contract because "[a] discharge of indebtedness occurs when the debtor is no longer legally required to satisfy his [or her] debt either in part or in full." (R. Doc. 20 at 8 (quotations omitted).) It concluded "[t]he record here indicates that the loans . . . were not discharged: they were extinguished after the insurer had

- 3 -

applied the cash value of the insurance policy towards the debt owed . . . ." (*Id.* at 8–9.)

Put another way, the debt was paid by the only security available for payment, not

discharged. Accordingly, it required the McGowens to recognize the $565,224.11 as

"income Mrs. McGowen received from her insurance policy under section 72(e)." (*Id.* at

10.)[4]

## DISCUSSION

The McGowens contend the tax court erred because they were indebted over the

face amount of the policy, the debt was discharged at the time of the policy termination

and any gain was excludable from taxation due to their insolvency. Predictably, the IRS

tells us 26 U.S.C. § 72(e)[5] was properly applied by the Tax Court. Furthermore, it denies

any stipulation as to insolvency and, quite to the contrary, argues Carolyn McGowen

"was not insolvent when the policy was cancelled." (Appellee Br. at 33.)

"We . . . review the tax court's decision in the same manner and to the same extent

as decisions of the district courts tried without a jury. Therefore, we review legal

questions *de novo* and factual questions for clear error." *Estate of True v. Comm'r*, 390

F.3d 1210, 1217 (10th Cir. 2004) (citation and quotations omitted). When the facts and

law are undisputed and the only question is whether the law as applied to the facts meets

the statutory standard, this Court is in the same position "as the tax court to draw

---

[4] Because the tax court rejected the McGowens' argument that the event was a discharge of debt, it did not reach the McGowens' claim they were insolvent under 26 U.S.C. § 108.

[5] Section 72(e)(1) requires taxpayers to include in their gross income any amount received under a "life insurance contract" that "is not received as an annuity." 26 U.S.C. § 72(e)(1)(A)(i),(ii).

conclusions from the undisputed facts presented . . . ." *NCAA v. Comm'r*, 914 F.2d 1417, 1420 (10th Cir. 1990) (quotation omitted).

The tax court did not address the issue of insolvency, nevertheless we are free to affirm a district or tax court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district or tax court. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001); *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994). In this case, we take the most direct route to resolution. Even assuming the unlikely -- the policy debt was discharged rather than paid -- the record undeniably establishes the McGowens were solvent at the time of discharge for purposes of 26 U.S.C. § 108(a)(1)(B).

Section 61 of the Internal Revenue Code requires a taxpayer who has received income from a life insurance contract which is later discharged to recognize that amount as taxable income. *See* 26 U.S.C. § 61(a)(12). However, Section 108(a) provides an exception to this rule if, *inter alia*, "the discharge occurs when the taxpayer is insolvent." 26 U.S.C. § 108(a)(1)(B). Section 108(d)(3), which defines the terms of the section, states:

> the term "insolvent" means the excess of liabilities over the fair market value of assets. With respect to any discharge, whether or not the taxpayer is insolvent, and the amount by which the taxpayer is insolvent, shall be determined on the basis of the taxpayer's assets and liabilities *immediately before the discharge.*

26 U.S.C. § 108(d)(3) (emphasis added).

The McGowens maintain their "insolvency was stipulated."[6] (Opening Br. at 3; *see also* Reply Br. at 4;.)  But that is not so.  A stipulated exhibit prepared by the McGowens lists their "assets and liabilities . . . as of May 1, 2004." (R. Ex. 18-J.)  It states their "net worth," which had not materially changed since the date the policy was cancelled, was "$3,701.20."[7] (*Id.*)  There is no stipulation of insolvency on the date the policy was terminated.  According to their own exhibits, the McGowens' assets exceeded their liabilities by almost $4,000.00 immediately before the cancellation of the life insurance contract.

Contrary to the McGowens' assertions that the policy debt rendered them insolvent, they owed nothing if they made no payment prior to the policy's termination.  The insurance contract limited the insurance company's ability to recoup payment of the debt on the contract to Carolyn McGowen's initial investment and the proceeds earned from that investment.[8] (*See* R. Doc. 10 at 2; *see also* R. Ex. 4-J at 20.)  The McGowens were solvent immediately before the cancellation of the policy and Section 108(d)(3) is

---

[6] At oral argument, counsel for the McGowens stated the record clearly established Carolyn McGowen "was insolvent" even excluding the million plus dollars of the policy liability.  (Oral Argument, March 9, 2011.)

[7] The parties also stipulated there was "no material change in [the McGowens'] assets and liabilities from March 30, 2004 until May 1, 2004, except for the termination of the life insurance policy . . . ."  (R. Doc. 10 at 4.)

[8] The McGowens concede the loans taken out against Carolyn's life insurance contract were "nonrecourse" policy loans.  (Opening Br. at 2, 6, 11-15.)  If the policy loans are "nonrecourse," the cash surrender value equals satisfaction of the debt, regardless of whether the policy debt actually exceeded the cash value.  Even if we were to consider the amount borrowed in excess of the policy's cash value, the McGowens would still be solvent by approximately $1,662.38 (assets of $3,701.20 minus remaining policy debt after the cash surrender value was applied, $2,038.82).  (*See* R. Exs. 12-J at 52, 18-J.)

inapplicable.

**AFFIRMED**.

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge