T.C. Memo. 2012-10

UNITED STATES TAX COURT

YULIA FEDER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1628-10.                    Filed January 10, 2012.


<u>Frank Agostino</u>, <u>Lawrence M. Brody</u>, and <u>Jeffrey M. Dirmann</u>, for petitioner.

<u>Sze Wan Florence Char</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of $1,713 in petitioner's 2007 Federal income tax.  The issue for decision is whether petitioner received a taxable constructive distribution in 2007 as reported on a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans,

IRAs, Insurance Contracts, etc., that Northwestern Mutual Life Co. (Northwestern) issued to her.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in New Jersey when the petition was filed.

On August 18, 1982, petitioner purchased a life insurance policy with a $50,000 death benefit from Northwestern. The policy required quarterly premiums of $73.[1] Petitioner paid the premiums as they became due until November 1987.[2] On January 3, 1988, petitioner sent Northwestern a letter requesting that her policy be canceled immediately (1988 letter). The 1988 letter also requested that future communications be sent to her new address, 1829 East 13th Street, Brooklyn, New York (13th Street).[3] Petitioner thought Northwestern would send her any forms needed to cancel the policy. She never received any further communication from Northwestern and assumed the policy was canceled.

---

[1] All amounts are rounded to the nearest dollar.

[2] Although petitioner does not remember making any premium payments after 1987, Northwestern's records show that it received premium payments on Aug. 2, 1988, and Mar. 6, 1989.

[3] Before moving to 13th Street petitioner resided on Homecrest Avenue in Brooklyn.

In 2008 Northwestern issued to petitioner a Form 1099-R for 2007 reporting a gross distribution of $12,654 and a taxable amount of $5,625.[4] Petitioner did not receive the Form 1099-R because Northwestern sent it to 1204 Avenue U, Brooklyn, New York (Avenue U), the address Northwestern had on file for the policy. This address was a mailbox petitioner had rented for 6 months in late 1987 to receive wedding RSVPs. Petitioner does not know how Northwestern learned of the Avenue U address.

Petitioner and her husband,[5] unaware of the Form 1099-R issued by Northwestern, did not report the $5,625 taxable distribution on their 2007 Federal income tax return. In 2009 petitioner became aware that the IRS had received a Form 1099-R from Northwestern reporting that she had $5,625 of taxable income in 2007. Petitioner, thinking her policy had been canceled for more than 20 years, contacted Northwestern. A Northwestern representative sent letters to petitioner on July 31 and September 16, 2009 (collectively, the 2009 correspondence), explaining that her policy had not been canceled and Northwestern had never received a change of address request. The representative further informed petitioner that when petitioner stopped making premium payments the policy's automatic premium

---

[4] See infra p. 4 for discussion of how Northwestern calculated the amounts reported on the Form 1099-R.

[5] Petitioner's husband did not join in the petition to this Court.

loan provision went into effect.[6]  Neither party introduced the policy into evidence.

From 1987 to 2007, Northwestern loaned petitioner $73 each quarter she missed her premium payment and used the loan proceeds to pay petitioner's premiums as they became due.  As of the May 18, 2007, premium due date, the amount of petitioner's loan equaled the cash value of the policy and Northwestern was unable to lend petitioner the $73 necessary to pay the premium.[7]  The policy lapsed on July 23, 2007.

Upon lapse, Northwestern used the policy's cash value, $12,654, to pay off the loan of the same amount.  Northwestern deducted total premiums paid of $7,029 from the loan amount to arrive at a taxable distribution of $5,625.

OPINION

I.  Burden of Proof

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears

---

[6]  Pursuant to the automatic premium loan provision, when the insured misses a premium payment Northwestern automatically lends the insured the amount of the premium and uses it to pay the premium.  Northwestern will lend the insured an amount up to the cash value of the insured's policy.  Interest accrues on the amount lent and is added to the principal balance of the loan if it remains unpaid.

[7]  Northwestern sent the quarterly premium notice for the May 18, 2007, premium to the Avenue U address on Apr. 29, 2007.

the burden of proving that those determinations are erroneous. Rule 142(a);[8] Welch v. Helvering, 290 U.S. 111 (1933).

A. Section 6201(d)

If an information return, such as a Form 1099-R, serves as the basis for the determination of a deficiency, section 6201(d) may apply to shift the burden of production to the Commissioner. Section 6201(d) provides that in any court proceeding, if a taxpayer asserts a reasonable dispute with respect to the income reported on an information return and the taxpayer has fully cooperated with the Commissioner, then the Commissioner has the burden of producing reasonable and probative information in addition to the information return. See McQuatters v. Commissioner, T.C. Memo. 1998-88.

Petitioner argues that she canceled the policy in 1988 and therefore no deemed distribution could have occurred in 2007. Alternatively, she argues that if there was a deemed distribution it occurred in a year other than 2007. These constitute reasonable disputes with an information return. See Kleber v. Commissioner, T.C. Memo. 2011-233 (finding a reasonable dispute when the taxpayers argued that the amount of cancellation of indebtedness, if any, was incorrect). Furthermore, petitioner

---

[8] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

has cooperated with the IRS.  Therefore, we hold that section 6201(d) applies and that the burden is shifted to respondent to produce reasonable and probative information concerning the deficiency in addition to the Form 1099-R Northwestern issued.

To prove that the Form 1099-R properly and accurately reported petitioner's 2007 taxable income, respondent introduced a declaration from the assistant director of policyowner services at Northwestern (declaration).[9]  The declaration includes petitioner's premium loan history and the 2009 correspondence. The declaration also explains how Northwestern calculated the figures on the Form 1099-R.  Thus, we find that respondent produced reasonable and probative information concerning the deficiency, thereby meeting his burden of production under section 6201(d).  See Sanders v. Commissioner, T.C. Memo. 2010-

---

[9] On reply brief, petitioner objects for the first time to the declaration as inadmissible hearsay.  The declaration was a joint exhibit which petitioner, while unrepresented, and respondent stipulated.  When respondent moved at trial to have the declaration introduced into evidence, there was no objection from petitioner.  Rule 91(d) requires that "Any objection to all or any part of a stipulation should be noted in the stipulation, but the Court will consider any objection to a stipulated matter made at the commencement of the trial or for good cause shown made during the trial."  Additionally, "A fundamental rule of evidence is that an objection not timely made is waived."  Estate of Smith v. Commissioner, T.C. Memo. 2001-303 (citing United States v. Jamerson, 549 F.2d 1263, 1266-1267 (9th Cir. 1977)), affd. 54 Fed. Appx. 413 (5th Cir. 2002); see Fed. R. Evid. 103(a)(1).  Petitioner waived her right to contest the admission of the declaration when she did not make a timely objection.  See Armstrong v. Commissioner, T.C. Memo. 2002-224 (taxpayer waived objection to admissibility of evidence after failing to make timely objection at trial).

279 ("stipulated documentation of petitioner's premium and loan history with * * * [insurance company] corroborates the information reported on the Form 1099-R").

B. <u>Unreported Income</u>

When a case involves unreported income and is appealable to the Court of Appeals for the Third Circuit, like this case, the Commissioner's determination of unreported income is entitled to the presumption of correctness only if the determination is supported by some evidence linking the taxpayer to the tax-generating activity. <u>Anastasato v. Commissioner</u>, 794 F.2d 884, 887 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101. Respondent has linked petitioner to the tax-generating activity by showing that the income reported on Form 1099-R resulted from a life insurance policy petitioner had with Northwestern. Thus, respondent's determination of unreported income is entitled to the presumption of correctness.

C. <u>Section 7491</u>

Petitioner also argues that the burden of proof shifts to respondent under section 7491. Section 7491(a)(1) and (2) shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if (1) the taxpayer introduces credible evidence with respect to such issue and (2) the taxpayer satisfies certain other conditions, including cooperation with the Government's requests for witnesses,

information, and documents.  See also Rule 142(a)(2).  The burden

is on the taxpayer to show that she satisfied these

prerequisites.  See <u>Richardson v. Commissioner</u>, T.C. Memo.

2005-143; H. Conf. Rept. 105-599, at 240, 242 (1998), 1998-3 C.B.

747, 994, 996.

The factual issue in this case is whether petitioner

canceled her life insurance policy in January 1988.  Under New

York law,[10] an insured must cancel the policy pursuant to the

terms of the policy.  See <u>Lofaro v. John Hancock Mut. Life Ins.

Co.</u>, 265 N.Y.S. 724, 727 (App. Div. 1933) ("To be effective, the

surrender or cancellation of this double indemnity provision of

the policy must be made in accordance with the requirements

imposed by the policy."), affd. 5 N.E.2d 365 (N.Y. 1934); <u>Pica v.

Profl. Risk Insurers Mgmt. Exclusive, Ltd.</u>, 614 F. Supp. 536, 537

(S.D.N.Y. 1985) (stating that terms of policy control whether

surrender of policy is required to effect cancellation).

Petitioner did not present any evidence that she canceled

the life insurance policy pursuant to its terms.  Petitioner

credibly testified that she sent a letter to Northwestern

requesting that it cancel her policy.  She did not, however,

introduce the policy or testify to its terms, and without

evidence as to the terms of the policy we do not know whether the

---

[10]  The parties agree that New York law governs the life
insurance contract.

letter was an effective means of canceling the policy.[11]  On the basis of petitioner's testimony at trial, it appears that when she sent the 1988 letter she did not think it was sufficient to cancel the policy.  Petitioner stated that "my train of thought was that I'm going to send the letter, and whatever forms need to be filled out, they will mail it to me."  Petitioner has failed to present credible evidence that she effectively canceled the insurance policy, and thus the burden of proof does not shift to respondent.

## II.  Taxation of Deemed Distribution

Petitioner's primary argument is that she canceled the policy in 1988 and therefore could not have received a deemed distribution in 2007.  As discussed above, petitioner was required to cancel the insurance policy pursuant to its terms.  She did not introduce the policy or testify to its terms regarding cancellation.  Thus, there is no evidence petitioner canceled the policy in 1988 according to the terms of the policy.  Although petitioner stopped paying her premiums in 1988, the automatic loan provision in the policy resulted in the premiums' being paid and the policy's remaining in effect until 2007.[12]

---

[11]  Additionally, there is no evidence that Northwestern received the 1988 letter.

[12]  Petitioner also argues that the automatic premium loan was not a bona fide loan.  This Court has held that loans against cash values of insurance policies are bona fide indebtedness.

(continued...)

When the May 18, 2007, premium was not paid, the policy lapsed on July 23, 2007.[13]

An amount received in connection with a life insurance contract which is not received as an annuity generally constitutes gross income to the extent that the amount received exceeds the investment in the insurance contract.[14]  Sec. 72(e)(1)(A), (5)(A), (C).  When Northwestern terminated

---

[12](...continued)
McGowen v. Commissioner, T.C. Memo. 2009-285, affd. 438 Fed. Appx. 686 (10th Cir. 2011); Atwood v. Commissioner, T.C. Memo. 1999-61.

[13]  In the alternative, petitioner argues that under N.Y. Ins. Law sec. 3211 (McKinney 2006 & Supp. 2011) the policy did not lapse until 2008 and thus the deemed distribution did not occur in 2007.  New York law prevents a life insurance policy from terminating for nonpayment of a premium within a year of default unless the insurance company has given valid notice.  Id. sec. 3211(a)(1).  The notice must be mailed to the last known address of the policy owner at least 15 but not more than 45 days before the due date.  Id. sec. 3211(a)(1), (b)(1).  The notice must state the amount of the payment, how to make the payment, the payment due date, and that the policy will lapse without payment.  Id. sec. 3211(b)(2).  Petitioner has not shown that Northwestern failed to comply with N.Y. Ins. Law sec. 3211. Northwestern sent petitioner a notice on Apr. 29, 2007, that stated that the $73 quarterly premium payment was due on May 18, 2007, and that the policy would lapse without payment. Northwestern sent the notice to the address they had on record for petitioner, the Avenue U address.  Petitioner has failed to show that Northwestern did not send the notice to petitioner's last known address within the meaning of the New York statute. Therefore, petitioner has not shown that Northwestern failed to satisfy N.Y. Ins. Law sec. 3211.

[14]  The investment in the contract is defined generally as the aggregate amount of premiums or other consideration paid for the contract less aggregate amounts previously received under the contract, to the extent they were excludable from gross income. Sec. 72(e)(6).

petitioner's policy, it applied the policy's cash value ($12,654) to the outstanding balance on the policy loans ($12,654). That action was the economic equivalent of Northwestern's distributing to petitioner $12,654 and her using that amount to pay off the policy loan. This constructive distribution of $12,654 is gross income to petitioner insofar as it exceeds her $7,029 investment in the contract. See McGowen v. Commissioner, T.C. Memo. 2009-285, affd. 438 Fed. Appx. 686 (10th Cir. 2011); Atwood v. Commissioner, T.C. Memo. 1999-61; Dean v. Commissioner, T.C. Memo. 1993-226. Consequently, $5,625 of the $12,654 constructive distribution was taxable income to petitioner.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit. To reflect the foregoing,

An appropriate order will be issued denying petitioner's oral motion to shift the burden of proof, and decision will be entered for respondent.