T.C. Summary Opinion 2012-108

UNITED STATES TAX COURT

SCOTT V. WHITE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12697-12S.                    Filed October 31, 2012.

Scott V. White, pro se.

<u>Peter T. McCary</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioner is liable for a deficiency of $577 for the taxable year 2008. Petitioner concedes that he received and failed to report interest income of $5, taxable dividends of $4, and a State income tax refund of $740. The issue remaining for decision is whether petitioner received in 2008 a constructive distribution of $3,089.92 from an insurance contract with Massachusetts Mutual Life Insurance Co. (Mass Mutual).

Background

This case was submitted fully stipulated under Rule 122, and all the stipulated facts are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in Georgia when he filed his petition.

On or about December 25, 1992, petitioner purchased a life insurance policy from Mass Mutual through his employer. Petitioner stated that he paid the insurance premiums through payroll deductions for "about three years, and when I switched employers, I ceased to pay on the life insurance policy with Mass Mutual."

Mass Mutual issued to petitioner for 2008 a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., showing a gross distribution of $25,167.01 and a taxable amount of $3,089.92. There is a "7" in box 7, Distribution code(s), of the Form 1099-R.

Petitioner wrote to Mass Mutual and requested a "letter/statement" explaining the $3,089.92 and the code 7 on the Form 1099-R. Mass Mutual explained in its response that petitioner's life insurance policy lapsed on September 25, 2008, with an outstanding loan. According to Mass Mutual, petitioner's "net cost basis" was $22,077.09 and his "Loan and Loan Interest Amount" was $25,167.01, leaving a "Taxable Gain" of $3,089.92. Mass Mutual further stated that the distribution code 7 in box 7 indicated that his distribution was a "normal distribution" and that it was not subject to early withdrawal penalties.

Mass Mutual also sent petitioner a second letter explaining his insurance policy provisions. In that second letter Mass Mutual advised petitioner that his policy was issued with an automatic premium loan provision. Under this provision, according to Mass Mutual, if any premium payment is not made by the end of the grace period, the amount due will automatically become a loan against the cash value of the policy, provided there is sufficient value in the policy. Mass

Mutual advised that interest accrues on the loans and, if not paid when due, is added to the loan balance. The letter further informed petitioner that when his policy no longer had enough value to support a loan to cover the premium obligation, the policy lapsed with a loan outstanding, creating taxable income to him that Mass Mutual was required to report to the Internal Revenue Service.

## Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).[1] Furthermore, although facts may be established by stipulation, a stipulation of facts does not relieve the party bearing the burden of proof from producing evidence in support of factual findings that have not been adequately established by the stipulation. Rule 149(b).

Under section 6201(d), however, the burden of production may shift to the Commissioner where an information return, such as a Form 1099-MISC,

---

[1]In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under sec. 7491(a). Petitioner did not argue or present evidence to show that he satisfied the requirements of sec. 7491(a). Therefore, petitioner bears the burden of proof with respect to the issues raised by the notice of deficiency.

Miscellaneous Income, serves as the basis for a deficiency determination.  If a taxpayer asserts a "reasonable dispute" with respect to any item of income reported on a third-party information return and has fully cooperated with the Commissioner, the Commissioner will have the burden of producing reasonable and probative information concerning the item of income in addition to the information return.  Id. The taxpayer must provide timely access to witnesses, information, and documents within the control of the taxpayer.  Id.  Assuming that petitioner has raised a reasonable dispute with respect to the Form 1099-R at issue and has fully cooperated with respondent, respondent's burden of production has been met by the stipulated letters from Mass Mutual.  See Kleber v. Commissioner, T.C. Memo. 2011-233.

Petitioner argues that he never received any money from Mass Mutual and he does not understand how he could owe tax on money he has not received.  The record does not contain a copy of the insurance policy, nor does it reflect an accounting of payments, loans, interest, or dividends.

An amount received in connection with a life insurance contract that is not received as an annuity generally constitutes gross income to the extent that the

amount received exceeds the investment in the insurance contract.[2]  Sec.

72(e)(1)(A), (5)(A), (C).  When petitioner's policy with Mass Mutual lapsed, Mass

Mutual applied the policy's cash value to the outstanding balance on the policy

loans that were made to satisfy premium obligations.  That action was the economic

equivalent of Mass Mutual's paying petitioner the policy proceeds, including

untaxed "inside buildup",[3] and his using those proceeds to pay off his policy loans.

This constructive distribution is gross income to petitioner insofar as it exceeds his

investment in the contract.  See Sanders v. Commissioner, T.C. Memo. 2010-279;

McGowen v. Commissioner, T.C. Memo. 2009-285, aff'd, 438 Fed. Appx. 686

(10th Cir. 2011); Atwood v. Commissioner, T.C. Memo. 1999-61.  The evidence

indicates that petitioner's investment in the contract was, as Mass Mutual reported,

---

[2]The investment in the contract is defined generally as the aggregate amount of premiums or other consideration paid for the contract, less aggregate amounts previously received under the contract, to the extent they were excludable from gross income.  Sec. 72(e)(6).

[3]Inside buildup is undistributed investment income earned on premiums credited under a contract that satisfies a statutory definition of life insurance that is not subject to current taxation to the owner of the contract.  See Brown v. Commissioner, T.C. Memo. 2011-83, slip op. at 12 n.6, aff'd, 693 F.3d 765 (7th Cir. 2012).

$22,077.09.  Consequently, as respondent determined, $3,089.92 of the $25,167.01 constructive distribution is taxable income to petitioner.[4]

To reflect the foregoing,

Decision will be entered

for respondent.

---

[4]When the policy was terminated, its cash value was less than the balance of petitioner's policy loans.  As it was not raised by the parties, the Court does not consider the issue as to whether the gross income that petitioner realized upon the termination of the policy should be characterized as income from discharge of indebtedness.  It does not appear that such a characterization would affect petitioner's tax liability.