**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-96

UNITED STATES TAX COURT

SAMUEL BRACH AND LILLIAN BRACH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15460-12S.　　　　　　　　Filed December 2, 2013.

<u>Ronald Jay Cohen</u>, for petitioners.

<u>Gennady Zilberman</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2010 Federal income tax of $6,949 and an accuracy-related penalty of $1,390 under section 6662(a) and (d) for a substantial understatement of tax.

After concessions by petitioners,[2] the issues remaining for decision are:

(1) Whether petitioners are liable for tax on income of $33,125[3] received from the surrender of a life insurance contract.  We hold that they are; and

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners concede that Mr. Brach received benefits of $10,284 and that Mrs. Brach received benefits of $1,932 from the Social Security Administration in 2010.  Petitioners further concede that their Social Security benefits will be includible in gross income as determined in the notice of deficiency if the substantive issue described above in the text is decided in respondent's favor.

Other adjustments made by respondent in the notice of deficiency, namely the increase in the child tax credit and the disallowance of both the earned income tax credit and the additional child tax credit, are mechanical in nature and have not been otherwise contested by petitioners.  The resolution of these other adjustments also depends on the disposition of the disputed substantive issue.

[3] Although the parties' stipulation of facts states the distribution was $33,124, all monetary amounts are rounded to the closest dollar.  Therefore, we decide this opinion using $33,125 for the amount received and $65,903 for the gross distribution.

(2) whether petitioners are liable for the accuracy-related penalty under section 6662(a) and (d).  We hold that they are not.

Background

Some of the facts have been stipulated, and they are so found.  We incorporate by reference the parties' stipulation of facts and supplemental stipulation of facts and accompanying exhibits.

Petitioners resided in New York at the time that the petition was filed.

In 2010 Mrs. Brach was employed in a bakery.  Mr. Brach was disabled during 2010 and was unable to engage in gainful employment.

In September 1984 Mr. Brach acquired an insurance policy on his life from Guardian Life Insurance Co. (Guardian).  The policy had a cash value portion and a dividends portion; the former grew with the age of the policy, and the latter grew with investments made through the policy.  Under the terms of the policy, Mr. Brach was permitted to borrow against the policy in an amount not in excess of its cash value.  Also under the terms of the policy, Mr. Brach was permitted to terminate the policy and receive as a distribution the cash value of the policy plus any accrued dividends minus any outstanding debts against the policy.

In or around 1995 Mr. Brach borrowed against the cash value of the policy. Interest due on the loan accrued at a specified annual percentage rate pursuant to the terms of the loan agreement. Petitioners did not pay back the loan.

In November 2010 Mr. Brach was obliged to surrender the policy after petitioners became unable to pay the premium or make loan repayments. Upon surrender, policy proceeds paid the outstanding loan in full, and Mr. Brach received a check for $3,786, which represented the net value of the policy.

Surrender of the policy gave rise to a gross distribution of $65,903. At the time of surrender, Mr. Brach's investment in the contract was $32,778.

Guardian issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2010 reflecting a gross distribution of $65,903 and taxable income of $33,125. The latter amount represented the difference between the gross distribution, $65,903, and Mr. Brach's investment in the contract, $32,778.

Petitioners retained Moses Neuman, an enrolled agent who practiced before the Internal Revenue Service as a tax professional, to prepare their 2010 tax return.[4] Petitioners provided Mr. Neuman with Mrs. Brach's Form W-2, Wage

_____

[4] As applicable for the 2010 taxable year, an enrolled agent is an individual "who demonstrates special competence in tax matters by written examination

(continued...)

and Tax Statement, both of petitioners' Forms 1099-SSA, Social Security Benefit

Statement, and the Form 1099-R in respect of the surrender of the life insurance

policy.

On the basis of petitioners' income and expenses, assets, and various loan

liabilities, Mr. Neuman determined that petitioners were insolvent and were not

required to report on their 2010 return cancellation of indebtedness income in

respect of the surrender of the life insurance policy. Further, given petitioners'

modest income (exclusive of the distribution arising from the surrender of the life

insurance policy), Mr. Neuman determined that no part of petitioners' Social

Security benefits was taxable. Finally, Mr. Neuman determined that it was

unnecessary to attach to petitioners' return a Form 982, Reduction of Tax

Attributes Due to Discharge of Indebtedness (and Section 1082 Basis

Adjustment), the Forms 1099-SSA issued by the Social Security Administration,

---

[4](...continued)
administered by, or administered under the oversight of, the Director of Practice [within the Internal Revenue Service] and who has not engaged in any conduct that would justify the censure, suspension, or disbarment of any practitioner". 31 C.F.R. sec. 10.4(a) (2007).

or the Form 1099-R issued by Guardian.[5] After preparing the return, Mr. Neuman reviewed it with petitioners, who then timely filed it.

In March 2012 respondent issued to petitioners a notice of deficiency for 2010, determining a deficiency of $6,949 and an accuracy-related penalty of $1,390 under section 6662(a) and (d). Petitioners timely filed a petition for redetermination.

## Discussion

## I. Life Insurance Contract[6]

### A. The Parties' Arguments

Petitioners invoke section 108. They argue that the surrender of their life insurance policy gave rise to cancellation of indebtedness income and that because

---

[5] Form 982 is used to determine the amount of discharged indebtedness that can be excluded from a taxpayer's gross income pursuant to sec. 108. The taxpayer must list the basis for exclusion from gross income (for example, insolvency) and the amount excluded from gross income. Form 982 is required to be filed with the taxpayer's tax return.

[6] The substantive issue presented by this case is essentially legal and not factual. We therefore need not address provisions affecting either the burden of proof or the burden of production. See, e.g., sec. 6201(d); Rule 142(a); Kleber v. Commissioner, T.C. Memo. 2011-233; Sanders v. Commissioner, T.C. Memo. 2010-279.

they were insolvent at the time, no part of the distribution is includible in gross income by virtue of section 108(a)(1)(B).[7]

Respondent argues that petitioners failed to prove that they were insolvent. But more fundamentally, respondent argues that because the surrender of the life insurance policy resulted in the full satisfaction of an outstanding debt (i.e., Guardian was paid in full and did not forgive any part of Mr. Brach's indebtedness), section 72 is the key Code section. The Court agrees with respondent that section 108 is not relevant and that section 72 provides the touchstone for decision. Accordingly, the issue of petitioners' insolvency vel non need not be decided.

B. Taxation of Distributions From Life Insurance Contracts

Gross income includes all income from whatever source derived. Sec. 61(a). Section 61 lists specific forms of gross income, including income from life insurance contracts. Sec. 61(a)(10).

---

[7] Sec. 108 provides that income received from the discharge of indebtedness may be excludable from a taxpayer's gross income under certain circumstances. Petitioners argue that sec. 108(a)(1)(B) applies, which provides as a general rule, "Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if the discharge occurs when the taxpayer is insolvent."

For Federal income tax purposes, petitioners' life insurance policy loan was a true loan. See McGowen v. Commissioner, T.C. Memo. 2009-285, 2009 WL 4797538, aff'd, 438 Fed. Appx. 686 (10th Cir. 2011); see also Atwood v. Commissioner, T.C. Memo. 1999-61, 1999 WL 109617. The insurance policy included terms for an interest rate on amounts borrowed against the policy, a requirement indicative of bona fide debt. McGowen v. Commissioner, 2009 WL 4797538, at *3 (citing Salley v. Commissioner, 55 T.C. 896, 903 (1971), aff'd, 464 F.2d 479 (5th Cir. 1972), Kay v. Commissioner, 44 T.C. 660, 670-672 (1965), and Dean v. Commissioner, 35 T.C. 1083, 1085 (1961)). Consequently, petitioners would not have had to recognize these loan proceeds as taxable income when they received them. See Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 207-208 (1990); Commissioner v. Tufts, 461 U.S. 300, 307 (1983). Rather, petitioners were expected to pay back the loans to the insurance company. See Commissioner v. Tufts, 461 U.S. at 307.

Where an insurance policy is terminated and the proceeds are used to satisfy a loan against the policy, the payment against the loan is treated as if the taxpayers received the payment and applied it against the outstanding loan. See McGowen v. Commissioner, T.C. Memo. 2009-285; Atwood v. Commissioner, T.C. Memo.

1999-61; see also Brown v. Commissioner, T.C. Memo. 2011-83, aff'd, 693 F.3d 765 (7th Cir. 2012); Barr v. Commissioner, T.C. Memo. 2009-250.

The tax treatment of a distribution from a life insurance policy is governed by section 72. Thus, an amount received in connection with a life insurance contract which is not received as an annuity generally constitutes gross income to the extent that the amount received exceeds the investment in the insurance contract. Sec. 72(e)(1)(A), (5)(A), (C); Feder v. Commissioner, T.C. Memo. 2012-10, 2012 WL 75114, at *4. The investment in the contract is defined generally as the aggregate amount of premiums or other consideration paid for the contract less aggregate amounts previously received under the contract, to the extent such amounts were excludable from gross income. Sec. 72(e)(6); Feder v. Commissioner, 2012 WL 75114, at *4 n.14; sec. 1.72-6(a), Income Tax Regs.

In the instant case, Mr. Brach owned a life insurance policy with Guardian. He took out a loan against the policy. After petitioners became financially unable to pay the premium or make loan repayments, the policy was surrendered in November 2010. The surrender of the policy gave rise to a gross distribution of $65,903. Upon surrender of the policy, the distribution proceeds were first used to satisfy Mr. Brach's outstanding loan against the policy, which loan was paid in full. Net proceeds of $3,786 were then paid in cash to Mr. Brach. Clearly,

Guardian did not forgive (or write off, cancel, or discharge) any part of the loan for the simple reason that it was paid in full.

At the time of surrender, Mr. Brach's investment in the contract was $32,778, which portion of the gross distribution was nontaxable. See sec. 72(e)(5)(A). But the balance of the gross distribution, or $33,125, constitutes taxable income. See Atwood v. Commissioner, 1999 WL 109617, at *2, stating:

> When * * * [the taxpayers'] policies terminated, their policy loans, including capitalized interest, were charged against the available proceeds at that time. This satisfaction of the loans had the effect of a pro tanto payment of the policy proceeds to petitioners and constituted income to them at the time. A contrary result would permit policy proceeds, including previously untaxed investment returns, to escape tax altogether and finds no basis in the law. [Citations omitted.]

Petitioners did not receive income from the discharge of indebtedness. A discharge of indebtedness occurs when "the debtor is no longer legally required to satisfy his debt either in part or in full." Caton v. Commissioner, T.C. Memo. 1995-80, 1995 WL 73451, at *15 (citing United States v. Centennial Sav. Bank FSB, 499 U.S. 573, 580-581 n.6 (1991)); see also McGowen v. Commissioner, T.C. Memo. 2009-285. In the instant case, the loan to Mr. Brach was not discharged; rather, it was extinguished after Guardian applied the distribution

proceeds against Mr. Brach's debt, completely satisfying the loan. Accordingly, Mr. Brach's debt was satisfied and not discharged.

II. Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes an accuracy-related penalty equal to 20% of the amount of any underpayment of tax that is attributable to a substantial understatement of income tax. By definition, an understatement is the excess of the tax required to be shown on the tax return over the tax actually shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

In the instant case, respondent's notice of deficiency determines the accuracy-related penalty on the basis of a substantial understatement of income tax. See sec. 6662(d). Here the understatement of $6,949 is substantial because it exceeds $5,000 and is greater than 10% of the tax required to be shown on the return. Consequently, respondent has carried his burden of production. As a result, petitioners now bear the burden to show that an exception to the penalty applies. See Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty with respect to any portion of an underpayment if the taxpayer establishes that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances, including the taxpayer's knowledge, education, and experience, as well as the taxpayer's reliance on professional advice. Thomas v. Commissioner, T.C. Memo. 2013-60; see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000) (providing a three-prong test to establish reasonable reliance on professional advice), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his or her

proper tax liability.  Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners contend they had reasonable cause and acted in good faith in relying on advice from their return preparer, Mr. Neuman.

Reliance on a professional tax adviser's advice may demonstrate reasonable cause and good faith if, taking into account all the facts and circumstances, the reliance was reasonable and the taxpayer acted in good faith.  Sec. 1.6664-(4)(b)(1), (c)(1), Income Tax Regs.  Reliance on a tax adviser may be reasonable and in good faith if the taxpayer establishes:  (1) The adviser was a competent professional with sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment.  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99.

Petitioners retained Mr. Neuman, an enrolled agent, to prepare their 2010 tax return.  As an enrolled agent, Mr. Neuman practiced before the Internal Revenue Service as a tax professional, a fact known to petitioners.  Petitioners provided Mr. Neuman with Mrs. Brach's Form W-2, both Forms 1099-SSAs in respect of their Social Security benefits, and the Form 1099-R in respect of the surrender of the life insurance policy.  Mr. Neuman determined that because

petitioners were insolvent, they were not required to include any income from the surrender of the life insurance policy on their 2010 tax return and that they did not need to attach a Form 982, the Form 1099-R, or the Forms 1099-SSA to their tax return when it was filed. Mr. Neuman explained to petitioners why, in his judgment, income from the surrender of the insurance policy need not be reported on their tax return. Mr. Neuman also advised petitioners that Social Security benefits are not reportable if a taxpayer's other income is sufficiently modest.

The status of enrolled agent can tend to show competence. See Mills v. Commissioner, T.C. Memo. 2013-4; see also Mortensen v. Commissioner, 440 F.3d 375, 388 (6th Cir. 2006) ("Much like a taxpayer's reliance on an attorney or an accountant, reliance on an enrolled agent is a factor we may consider in determining the reasonableness of a taxpayer's actions".), aff'g T.C. Memo. 2004-279. An enrolled agent is an individual who has displayed "special competence in tax matters". 31 C.F.R. sec. 10.4(a) (2007). In the instant case, the record demonstrates both that petitioners reasonably believed that Mr. Neuman was competent to prepare their return and that they had no reason to question his advice.

Next, petitioners provided to Mr. Neuman complete and accurate information, specifically including Mrs. Brach's Form W-2, both Forms 1099-SSA

regarding petitioners' Social Security benefits, and the Form 1099-R regarding the surrender of the life insurance policy.

Finally, petitioners relied in good faith on Mr. Neuman's judgment. It is clear from the record that petitioners are not experienced in tax matters. Mr. Neuman explained to petitioners that because of their insolvency and otherwise modest income, no part of either the distribution from Guardian or their Social Security benefits would be taxable and that petitioners need not attach to their return either Form 982 or any Form 1099. Petitioners had no reason not to accept Mr. Neuman's advice, and they filed their tax return accordingly.

In sum, the Court finds that petitioners acted in good faith and reasonably relied on Mr. Neuman, an enrolled agent, to whom they fully disclosed all information necessary to determine their proper tax liability for 2010. See Thomas v. Commissioner, T.C. Memo. 2013-60; see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 98-99; Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23; sec. 1.6664-4(b)(1), Income Tax Regs. We therefore hold that petitioners come within the reasonable cause exception of section 6664(c)(1) and are not liable for the accuracy-related penalty under section 6662(a) and (d).

Conclusion

We have considered all of the arguments advanced by the parties, and, to the extent not expressly addressed, we conclude that those arguments do not support results contrary to those reached herein.

To give effect to our disposition of the disputed issues,

Decision will be entered for respondent as to the deficiency in tax and for petitioners as to the accuracy-related penalty.