T.C. Memo. 2014-27

UNITED STATES TAX COURT

BOYD J. BLACK AND JANICE C. BLACK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6406-12.                    Filed February 12, 2014.


P-H borrowed against a life insurance policy but failed to repay the loans. The policy was terminated, and the loans were satisfied by policy proceeds and extinguished. R contends that the amount realized upon termination of the policy includes both loan principal and capitalized interest; Ps contend that the amount realized includes only loan principal.

<u>Held</u>: Capitalized interest that accrued on P-H's loans against his life insurance policy is includible in determining the gross distribution and the taxable amount arising from the termination of the policy.

<u>Held</u>, <u>further</u>, Ps are liable for the I.R.C. sec. 6662(a) accuracy-related penalty.


Boyd J. Black and Janice C. Black, pro sese.

<u>S. Mark Barnes</u>, for respondent.

**[*2]**                    MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:  Respondent determined a deficiency in petitioners' 2009 Federal income tax of $30,571 and an accuracy-related penalty of $6,114 under section 6662(a) and (d) on the basis of a substantial understatement of income tax.[1]

After concessions by petitioners,[2] the issues for decision are as follows:

(1) Whether capitalized interest in respect of policy loans is part of the amount received by petitioners upon termination of a life insurance contract.  We hold that it is; and

(2) whether petitioners are liable for the accuracy-related penalty under section 6662(a) and (d).  We hold that they are.

---

[1] All section references are to the Internal Revenue Code (Code) in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts are expressed in whole dollars without regard to cents.

[2] Petitioners concede that they received a taxable distribution of $1,310 from Northwestern Mutual Life Insurance Co. in respect of a life insurance policy other than the life insurance policy that is at issue herein.  Petitioners also concede that they are liable for tax on a taxable distribution of $16,885, as well as the proportional sec. 6662(a) penalty, arising from the termination of the life insurance policy that is at issue herein.

Adjustments made in the notice of deficiency that are purely mechanical in nature are not in issue and will be resolved on the basis of petitioners' concessions and the Court's disposition of the disputed substantive issue.

**[*3]**                                    Background

This case was submitted fully stipulated under Rule 122.  We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners resided in the State of Utah at the time that the petition was filed.

In 2009 petitioner Boyd J. Black was employed as an attorney.  Petitioner Janice C. Black was a homemaker who also had a modest proprietorship involving crafts and sewing that reported its income on a Schedule C, Profit Or Loss From Business.

In June 1989 Mr. Black acquired an insurance policy on his life from Northwestern Mutual Life Insurance Co. (Northwestern).  The policy was a so-called whole life policy having both cash value and loan features.

Under the terms of the policy, Mr. Black was permitted to borrow against the policy in an amount not in excess of its cash value.  In that regard the policy provided that policy debt consisted of all outstanding loans and accrued interest and that unpaid interest would be added to loan principal.  The policy also provided that Mr. Black could surrender the policy and receive as a distribution the cash value of the policy minus any outstanding policy debt.  Finally, the policy provided that it would terminate if policy debt were to equal (or exceed) the cash value.

**[*4]** Over time Mr. Black borrowed $103,548 against the policy. In addition, interest due on each loan accrued at a specified annual percentage rate pursuant to the terms of the policy. Mr. Black did not repay the loans.

In January 2009 the policy was terminated. Upon termination, the outstanding loans were satisfied by policy proceeds and extinguished. At that time the combined balance of the loans, including principal and interest, was $196,230, and Mr. Black's investment in the contract (in the form of aggregate premiums paid) was $86,663.

Northwestern issued to Mr. Black a Form 1099-R, Distributions From Pensions, Annuities, Retirement Or Profit-Sharing Plans, IRAs, Insurance Contracts, Etc., for 2009 reflecting a gross distribution of $196,230 and a taxable amount of $109,567. The latter amount represented the difference between the combined balance of the loans at the time that the policy was terminated, i.e., $196,230, and Mr. Black's investment in the contract, i.e., $86,663.

Petitioners self-prepared and timely filed their 2009 Federal income tax return, reporting a total tax due of $36,583. They did not report any part of the taxable income reflected on the Form 1099-R that had been issued by Northwestern, nor did they acknowledge on their return either such form or any aspect of the termination of the life insurance policy or even the policy itself.

[*5]   During the summer of 2011 petitioners prepared a Form 1040X, Amended U.S. Individual Income Tax Return, for 2009 (amended return) and provided it to respondent in early August 2011.  The amended return reflected an increase in income of $16,885 attributable to the difference between the principal of the loans petitioners received from Northwestern totaling $103,548 less the amount of premiums paid to Northwestern totaling $86,663.  The amended return reported a total tax of $41,358, which reflects the total tax due on their original return plus the additional tax due on the basis of the increase in taxable income.  Petitioners enclosed a check for $4,775 for tax on the increased income reported on the amended return.  However, the amended return was not accepted or otherwise processed by respondent, nor was the additional tax assessed; nevertheless, the check was cashed and $4,775 was credited to petitioners' account.

In December 2011 respondent issued petitioners a notice of deficiency for 2009, determining a deficiency of $30,571 and an accuracy-related penalty of $6,114 under section 6662(a) and (d).  The deficiency and penalty were determined without regard to the amended return.  Petitioners timely filed a petition for redetermination.

**[\*6]**                                    <u>Discussion</u>

I.  <u>Burden of Proof</u>

In general, the Commissioner's determinations set forth in a notice of

deficiency are presumed to be correct, and the taxpayer bears the burden of

proving that those determinations are in error.  Rule 142(a); <u>Welch v. Helvering</u>,

290 U.S. 111, 115 (1933); <u>cf.</u> secs. 6201(d), 7491(a).[3]  The submission of a case

under Rule 122 does not alter the taxpayer's burden of proof.  Rule 122(b); <u>see</u>

<u>Borchers v. Commissioner</u>, 95 T.C. 82, 91 (1990), <u>aff'd</u>, 943 F.2d 22 (8th Cir.

1991).

As presented by the parties and on the basis of the stipulated facts, the

substantive issue in this case is legal and not factual.  Therefore, the burden of

proof does not inform our analysis of such issue.  <u>Kleber v. Commissioner</u>, T.C.

Memo. 2011-233; <u>Sanders v. Commissioner</u>, T.C. Memo. 2010-279.  However,

insofar as the penalty issue may present factual issues, infirmities in the record

redound to petitioners' detriment.  <u>See</u> Rule 122(b); <u>Woodsum v. Commissioner</u>,

136 T.C. 585, 593, 594, 596 (2011) (in a fully stipulated case submitted under

Rule 122 involving liability for the accuracy-related penalty, gaps in the

---

[3] We note that apart from the legal issue presented herein, petitioners do not dispute the accuracy of the Form 1099-R issued by Northwestern.  Therefore, sec. 6201(d) does not apply.

[*7] evidentiary record negatively affected the taxpayers because they bore the burden of proving that they had reasonable cause under section 6664 in omitting income from their return).

II. Life Insurance Contract

The parties agree that the taxable amount of the gross distribution that arose because of the termination of the Northwestern life insurance policy does not include Mr. Black's investment in the contract of $86,663. The parties further agree that the taxable amount of such distribution takes into account the principal amount of Mr. Black's outstanding loans totaling $103,548. Respondent contends that the taxable amount also takes into account capitalized interest, whereas petitioners contend that it does not. Therefore, the central issue of this case is whether capitalized interest is includible in determining the gross distribution and the taxable amount that arose from the termination of the Northwestern life insurance policy.

A. Sections 61 and 72

Gross income includes all income from whatever source derived. Sec. 61(a). Section 61 lists specific forms of gross income, including income from life insurance contracts and income from discharge of indebtedness. Sec. 61(a)(10), (12).

**[\*8]**  For Federal income tax purposes, Mr. Black's life insurance policy loans were true loans.  See McGowen v. Commissioner, T.C. Memo. 2009-285, 2009 WL 4797538, aff'd, 438 Fed. Appx. 686 (10th Cir. 2011); see also Atwood v. Commissioner, T.C. Memo. 1999-61, 1999 WL 109617.  The insurance policy included terms for an interest rate on amounts borrowed against the policy, which is indicative of bona fide debt.  See McGowen v. Commissioner, 2009 WL 4797538, at \*3 (citing Salley v. Commissioner, 55 T.C. 896, 903 (1971), aff'd, 464 F.2d 479 (5th Cir. 1972), Kay v. Commissioner, 44 T.C. 660, 670-672 (1965), and Dean v. Commissioner, 35 T.C. 1083, 1085 (1961)).  Pursuant to the policy's terms, amounts borrowed, as well as interest on these amounts, reflected bona fide loans, which were collateralized by the policy's value.  See Sanders v. Commissioner, T.C. Memo. 2010-279.  Consequently, petitioners would not have had to recognize these loan proceeds as taxable income upon receipt, see Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 207-208 (1990); Commissioner v. Tufts, 461 U.S. 300, 307 (1983), because they were obliged to repay the loans to Northwestern, see Commissioner v. Tufts, 461 U.S. at 307.

When an insurance policy is terminated and all or part of the proceeds are used to satisfy a loan against the policy, the transaction is treated as if the taxpayers received the proceeds and applied them against the outstanding loan.

**[\*9]** See <u>McGowen v. Commissioner</u>, T.C. Memo. 2009-285; <u>Atwood v. Commissioner</u>, T.C. Memo. 1999-61; <u>see also</u> <u>Brown v. Commissioner</u>, T.C. Memo. 2011-83, 2011 WL 1396936, <u>aff'd</u>, 693 F.3d 765 (7th Cir. 2012); <u>Barr v. Commissioner</u>, T.C. Memo. 2009-250.

The tax treatment of a distribution from a life insurance contract before the death of the insured is governed by section 72. <u>Brown v. Commissioner</u>, 2011WL 1396936, at \*4-\*6. As relevant herein, an amount received in connection with a life insurance contract that is not received as an annuity generally constitutes gross income to the extent that the amount received exceeds the investment in the insurance contract. Sec. 72(e)(1)(A), (5)(A), (C); <u>Feder v. Commissioner</u>, T.C. Memo. 2012-10, 2012 WL 75114, at \*4. The investment in the contract is defined generally as the aggregate amount of premiums or other consideration paid for the contract less aggregate amounts previously received under the contract, to the extent such amounts were excludable from gross income. Sec. 72(e)(6); <u>Feder v. Commissioner</u>, 2012 WL 75114, at \*4 n.14; sec. 1.72-6(a), Income Tax Regs.

B. <u>Inclusion of Capitalized Interest</u>

Mr. Black's insurance policy, by its own terms, treated the policy loans, including capitalized interest, as bona fide indebtedness. The capitalized interest on these loans is properly treated as part of the principal of this indebtedness. <u>See</u>

[*10] <u>Allan v. Commissioner</u>, 86 T.C. 655, 661-667 (1986) (advances for interest that were added to the nonrecourse mortgage principal, pursuant to the terms of the mortgage, constituted a true debt obligation), <u>aff'd</u>, 856 F.2d 1169 (8th Cir. 1988); <u>see also</u> <u>Sanders v. Commissioner</u>, T.C. Memo. 2010-279.

Capitalized interest is includible in determining the amount of a taxpayer's gross distribution when an insurance policy is terminated.  In this regard, <u>Atwood v. Commissioner</u>, 1999 WL 109617, at *2, states as follows:

> [The taxpayers'] insurance contracts, by their terms, treated the policy loans, including capitalized interest, as bona fide indebtedness. For Federal income tax purposes, their policy loans constituted true loans, rather than cash advances, and were not taxable distributions when received.  <u>The capitalized interest on these loans is properly treated as part of the principal of this indebtedness</u>.

> When * * * [the taxpayers'] policies terminated, their policy loans, <u>including capitalized interest</u>, were charged against the available proceeds at that time.  This satisfaction of the loans had the effect of a pro tanto payment of the policy proceeds to petitioners and constituted income to them at the time.  A contrary result would permit policy proceeds, including previously untaxed investment returns, to escape tax altogether and finds no basis in the law. [Emphasis added; fn. ref. and citations omitted.]

In the instant case, Mr. Black owned a life insurance policy with Northwestern.  He took out loans against the policy.  In January 2009 the policy terminated.  The termination of the policy gave rise to a gross distribution of $196,230, a portion of which was applied to both the loan principal and

**[\*11]** capitalized interest. At the time that the policy was terminated, Mr. Black's investment in the contract was $86,663; which portion of the gross distribution was nontaxable. See sec. 72(e)(5)(A). But the balance of the gross distribution, or $109,567, constitutes taxable income. See Atwood v. Commissioner, T.C. Memo. 1999-61; see also Brown v. Commissioner, T.C. Memo. 2011-83; McGowen v. Commissioner, 2009 WL 4797538, at \*4 ("[T]he distributed policy proceeds attributed to the return on investments must be taxed since the accruals on the investments were not previously taxed. Untaxed accrual on an investment is often referred to as inside buildup.").

C. Discharge of Indebtedness

Petitioners appear to argue that the termination of the life insurance policy gave rise to a discharge of indebtedness. A discharge of indebtedness occurs when "the debtor is no longer legally required to satisfy his debt either in part or in full." Caton v. Commissioner, T.C. Memo. 1995-80, 1995 WL 73451, at \*15; see also United States v. Centennial Savs. Bank FSB, 499 U.S. 573, 580-581 (1991). On the basis of the facts presented, the Court cannot characterize the source of petitioners' income as derived from the discharge of indebtedness. See McGowen v. Commissioner, 2009 WL 4797538, at \*3. The record indicates that the loans to Mr. Black were not discharged; rather, they were extinguished after Northwestern

**[*12]** applied the cash value of the insurance policy toward the debt owed by Mr. Black. See id. at *4. The insurance policy itself was the sole collateral from which Northwestern could seek repayment of the amount Mr. Black had borrowed. Consequently, the insurance policy mandated the termination of the insurance policy once the amount borrowed against the policy equaled or exceeded the cash surrender value.

Even if the income received by petitioners were discharge of indebtedness income, petitioners have not alleged that any exception under section 108 applies to exclude the amount from gross income. Therefore, the amount would be includible in income under section 61(a)(12) and subject to tax. However, this issue is moot because petitioners' debts were not discharged but rather extinguished, and thus petitioners' income was not from discharge of indebtedness.

## III. Accuracy-Related Penalty

Section 6662(a) imposes an accuracy-related penalty equal to 20% of the amount of any underpayment of tax that is attributable to a substantial understatement of income tax. By definition, an understatement is the excess of the tax required to be shown on the tax return over the tax actually shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is "substantial" if it

**[*13]** exceeds the greater of $5,000 or 10% of the tax required to be shown on the return.  Sec. 6662(d)(1)(A).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect.  See Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

In the instant case, respondent's notice of deficiency determines the accuracy-related penalty on the basis of a substantial understatement of income tax.  See sec. 6662(d).  Here the understatement of $30,571 is substantial because it exceeds $5,000 and is greater than 10% of the tax required to be shown on petitioners' return.  Consequently, respondent has carried his burden of production.  As a result, petitioners now bear the burden to show that an exception to the penalty applies.  See Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty with respect to any portion of an underpayment if the taxpayer establishes that there was reasonable cause for such portion and the taxpayer acted

[*14] in good faith with respect to such portion. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances, including the taxpayer's knowledge, education, and experience, as well as the taxpayer's reliance on professional advice. Thomas v. Commissioner, T.C. Memo. 2013-60; see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000) (providing a three-prong test to establish reasonable reliance on professional advice), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners self-prepared their 2009 Federal income tax return, and nothing in the record suggests that they consulted with a professional adviser in connection therewith. Nevertheless, petitioners contend they had reasonable cause and acted in good faith.[4] However, Mr. Black is an attorney, and petitioners have not cited

---

[4] On brief petitioners expressly "concede the applicability of the IRC § 6662(a) penalty in regard to the underpayment of tax remedied by petitioners' filing of their 2009 Form 1040X." See supra note 2. Presumably petitioners also concede such penalty in respect of the $1,310 distribution from the Northwestern policy that is not at issue herein, see supra note 2, as petitioners are mute about such matter and there is nothing in the record that might serve to satisfy their

(continued...)

**[*15]** any case holding that interest on loans made against an insurance policy is not includible in the gross distribution when the policy is terminated for nonpayment. Rather, the only authorities petitioners cite are Code sections and Treasury regulations that are inapposite to the case at hand. We therefore hold that petitioners do not come within the reasonable cause exception of section 6664(c)(1), nor may they invoke the "substantial authority" provision of section 6662(d)(2)(B)(i) to reduce the amount of the understatement for penalty computation purposes. Accordingly, petitioners are liable for the accuracy-related penalty under section 6662(a) and (d) as determined by respondent. See sec. 1.6664-4(b)(1), (d), Income Tax Regs.; see also Brown v. Commissioner, 2011 WL 1396936, at *8-*10; Atwood v. Commissioner, 1999 WL 109617, at *3.

## Conclusion

We have considered all of the arguments advanced by petitioners, and, to the extent not expressly addressed, we conclude that those arguments do not support results contrary to those reached herein.

---

[4](...continued) burden of proof as to the underpayment attributable to such distribution. The Court therefore proceeds on the basis that petitioners challenge the accuracy-related penalty only insofar as it relates to the underpayment of tax arising from the inclusion of capitalized interest upon the termination of the Northwestern policy at issue herein.

[*16] To give effect to petitioners' concessions and our disposition of the disputed issues,

Decision will be entered for

respondent.[5]

---

[5] Presumably, respondent will credit petitioners' payment of $4,775 against the deficiency to be assessed.